**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 2 1 2021

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
~~WESTERN~~ DIVISION
Central

SANDRA JONES, Personal Representative of                    PLAINTIFF
the Estate of ANTONIO L. JONES, Deceased

VS.                    Case No: 4:21-cv-444-BRW

FAULKNER COUNTY, ARKANSAS                    DFENDANTS
Dr. GARRY STEWART, M.D., Individually,
KAREN GRANT, Individually,
and LEANNE DIXON, Individually

This case assigned to District Judge Wilson
and to Magistrate Judge Ray

## COMPLAINT

Comes now the Plaintiff, Sandra Jones, (Jones) as the Personal

Representative of the Estate of Antonio L. Jones, deceased (Estate), by and through

her attorneys, the Morris W. Thompson Law Firm, P.A., and Randy Hall Law

Firm. For her complaint against the Defendants, Faulkner County, Arkansas, (the

County), Dr. Garry Stewart, M.D. (Stewart), Karen Grant (Grant), and LeAnne

Dixon (Dixon), the plaintiff states and alleges as follows:

## INTRODUCTION

1.      This is an action brought under 42 U.S.C. § 1983; Ark. Const. Art. 2 §

13, and the Arkansas Civil Rights Act (ACRA), codified at A.C.A. § 16-123-101 et

seq. The Plaintiffs seek redress against Faulkner County for its policies,

procedures, customs and usages which were deliberately indifferent to and

1

proximately caused violation of the Plaintiffs' rights. In addition thereto she seeks

redress against jointly and severally in their individual capacities for their actions

which violated her decedent's constitutional rights to be free from unreasonable

seizures and terms of confinement, protected by the U.S. and Arkansas

Constitutions as well as federal and state laws.

2.      Additionally, pursuant to its plenary power under 28 U.S.C. § 1367,

Plaintiff seeks redress under the Arkansas Constitution, Art. 2 § 2, Art. 2 § 3, Art.

2 § 9, and the Arkansas Civil Rights Act (ACRA), codified at A.C.A. § 16-123-101

et seq.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section

1343(a)(3), the jurisdictional provision of 42 U.S.C. § 1983; original jurisdiction

pursuant to 28 U.S.C. § 1331, federal question jurisdiction; and 28 U.S.C. §§ 220

and 2202. Additionally, pursuant to 28 U.S.C. § 1367, this court has supplemental

jurisdiction to hear and decide the pendant causes of action under the Arkansas

Constitution, the Arkansas Civil Rights Act (ACRA), codified at A.C.A. § 16-123-

101 et seq., and Arkansas statutory and common-law tort actions as well.

4.      All parties, for all relevant time periods, were residents of the Western

Division of the Eastern District and all acts complained of occurred within said

Western Division of the Eastern District.  Consequently, venue is proper in this

court pursuant to 28 U.S.C. § 1391(b).

PARTIES

5.      At all relevant times, Antonio L. Jones (the decedent) was a resident of Jefferson County, Arkansas. As such he was a citizen of the United States of America and was, therefore entitled to all legal and constitutional rights afforded citizens of the United States of America.

6.      Plaintiff, Sandra Jones (Ms. Jones), the biological mother of the decedent.  On July 13, 2020, Ms. Jones was duly appointed the Special Administrator of the Estate of Antonio L. Jones pursuant to the order of the Jefferson County Circuit Court, in Case No: 35PR-20-180. Attached hereto as exhibit 1 is the order appointing her Special Administrator. She brings this action on the behalf of the heirs and statutory beneficiaries of Antonio L. Jones, Deceased.

7.      The County is a municipality organized and existing under the laws of the State of Arkansas.

8.      At all relevant times, the County is and was empowered, funded and directed to pay any § 1983 civil rights judgments for compensatory damages, actual damages, punitive damages and attorney fees for the County's actions which were a direct and proximate cause of the plaintiff's injuries and damages.

9.      Plaintiff seeks redress against the County for Sheriff Ryall's

3

decisions resulting in the failure to adequately instruct, train, supervise, the various

detention officers employed at the FCDC which resulted in the violation of the

decedent's rights protected by the 4th Amendments to the U.S. Constitution, federal

laws and the ACRA. Decisions as the final decision and policymaker for the FCDC

which is part of the County's Sheriff's Department are County policies.

10.    At all relevant times relevant, Tim Ryalls (Ryalls), was the legally

constituted Sheriff for the County and who functioned in that capacity at all times

relevant hereto. Ryalls was the final decision maker for the County Sheriff's

Department and the Faulkner County Detention Center (FCDC) and had final

policy making authority in terms of creating, adopting and/or implementing

policies, procedures and practices within the Sheriff's Department and FCDC

whether formal or informal. As Sheriff, all acts in that capacity are actions under

color of law and on behalf of the County. As a governmental entity, the County is

not entitled to qualified immunity.

11.    Furthermore, pursuant to a contract with the County, Dr. Garry

Stewart was hired to establish and structure the delivery of comprehensive medical

services for individuals detained in FCDC. Under the authority of that contract,

Stewart acted in a traditional governmental function and carried out traditional

governmental duties thereby acting under color of state law. In that respect, Dr.

Stewart's decisions established polices for the County with respect to the provision

4

of medical care and treatment of detainees in the FCDC. Plaintiff seeks redress against the County for the policies and practices Stewart established for the FCDC, and which the County adopted and ratified, which caused the violation of the civil rights of detainees are entrusted in the care of the County with respect to their known serious medical conditions.

12.     Karen Grant, LPN, (Grant), at all times relevant, is a nurse licensed to practice nursing by the State of Arkansas and is an employee of the County.  In that regard, Grant is a state actor and her actions are cloaked under the color of law. She is being sued for her delay in   providing proper medical care for Antonio L. Jones' serious medical needs which amounts to deliberate indifference in violation of his rights; as well as for negligence for failure to meet the applicable standards of nursing care. Furthermore, Antonio L. Jones's rights were so clearly established that Grant is not entitled to qualified immunity.

13.     LeAnne Dixon, MA, (Dixon), at all times relevant, was a medical assistant and an employee of the County at the FCDC.  In that regard, Dixon is a state actor and her actions are cloaked under the color of law. She is being sued for her delay in providing proper medical care for Antonio L. Jones' serious medical needs which amounts to deliberate indifference in violation of his rights. Furthermore, Antonio L. Jones' rights were so clearly established that Dixon is not entitled to qualified immunity.

## FACTS

14.     On August 7, 2019, Antonio L. Jones was arrested in Russellville, AR on a Failure to Appear at a child support hearing in Faulkner County and he was held overnight in the Pope County jail.

15.     Upon information and belief, at approximately 8:45, a Faulkner County Sheriff's Dept transport officer, picked up Antonio from the Pope County jail and drove him to Conway, Arkansas arriving at the FCDC at approximately 9:46 am.

16.     Upon information and belief, at approximately 10:09 the FCDC detention officers began the book-in process but was halted before completion. Antonio L. Jones was placed in a cell.

17.     Dr. Stewart has hired by the County to serve as Medical Director for the FCDC. In pertinent part, his duties under the contract included but not limited to:

a. .. patient intake and screening, needs assessment, and referral to appropriate medical or psychiatric providers. Doctor will direct medical needs and services of the jail to assure compliance with jail regulations; and

c.  Review the Jail Medical Services Plan for inmate healthcare as requested by the Faulkner County Sheriff or his designee;

18.     Under his authority as set out herein above, Dr. Stewart established the FCDC medical protocols. As a medical service provider for a detention facility, Dr.

6

Stewart was aware that drug overdose is a significant problem in detention

facilities happening with more and more frequency. However, despite his

awareness of this problem, he failed to include a protocol for drug overdoses.

19.     A few minutes before 3 pm, Antonio L. Jones was taken from the cell

to be fingerprinted.

20.     The detention officer noted Antonio L. Jones was sweating profusely

and shaking vigorously. Pursuant to the medical book he attempted to take

Antonio's vital signs in preparation to inform the clinic nurse of Jones' condition.

21.     At approximately 3:15 pm, Dixon, the medical assistant, noticed the

detention officer's attention to Antonio L. Jones' and Jones' medical distress and

attempted to assist the officer in obtaining Jones' vitals.

22.  In furtherance of his authority as the final decision maker in all matters

relating to medical care and treatment of FCDC detainees, Dr. Stewart compiled a

3 ring binder of directives, policies and procedures for the detention officers. The

binder was commonly referred to by FCDC personnel as "the Medical Book". The

Medical Book sets the policies which FCDC detention officers are to follow in

responding to detainees such as Jones who display both a multitude of common

and serious medical conditions. The Medical Book sets forth specific criteria that

allows FCDC personnel to call and inform the on call nurse, in this case, Grant, for

both common questions and serious medical inquiries. It furthermore dictates

7

medical information FCDC personnel are to possess when the FCDC officers inquire from and inform the medical staff of a detainee's medical condition. It does not set forth any criteria for potential drug overdoses.

23.   In other words, the Medical Book determines and directs the circumstances under which a FCDC detention officer is allowed to contact the on duty nurse with their concerns about a detainee's health.

24.   The very top of the first page of the binder states in large font and bold letters: "**Criteria To Be Obtained Prior To Calling The Nurse** (April 19, 2012)."

25.   Prior to calling the nurse, the policies require the detention officers to take, record, and report the detainees' vital signs and other medical data despite the fact that the FCDC detention officers are not trained on how to properly do collect the data. Likewise the Medical Book does not provide any direction on how to properly take vital signs.

26.   At approximate 3:19, Dixon called the infirmary to advise Grant, the clinic LPN, of Jones' condition. Dixon advised Grant that Jones was shaking, sweating, eyes were really red, and that the detention officer could not get his vitals due to Antonio L. Jones shaking so badly.

27.   Grant ordered Dixon to test Antonio L. Jones' blood sugar. Dixon and the detention officer did so.

8

28.     While working with the detention officer Dixon could not get temperature or blood pressure readings because Antonio L. Jones was shaking too much. The cuff kept giving them an "error" reading.

29.     Dixon asked Antonio L. Jones if he was diabetic and Jones replied that he might be type 2, but he wasn't sure. Due to the shaking, the detention officer had to hold Antonio L. Jones' finger while Dixon stuck Antonio's finger.

30.     The sample showed a blood sugar level of 84, which, according to the detention officers' on duty medical reference guide, did not warrant calling the on duty nurse.

31.     A few minutes later at approximately 3:23 pm, Dixon called Grant again with the results and advised her that they were not able to get a blood pressure reading. At that time Grant ordered Antonio L. Jones to be placed on a medical watch for 4 hours.

32.     The FCDC Suicide and Medical Watch Protocol directs:

1.     Obtain permission from the nurse.
2.     Closely Monitor.
3.     Check every 15 minutes.
4.     Release when informed by nurse.
5.     Make sure you place this report in the medical box by the end of your shift.
6.     Follow medical directive with no deviation.

After listing several criteria, the bottom of the page states in large font and bold print:

9

## "**DO NOT SEND ANY INMATE TO ER WITHOUT NURSE APPROVAL!**"

33.    Within a minute or two, the detention officers called Grant again advising her Jones' condition was worsening and to find out how often Jones' vitals were to be taken. Grant instructed that Jones' vitals were to be taken every hour.

34.    Medical watch consists of sitting a detainee on a bench handcuffed, in front of the intake desk where he or she is out in the open and can be observed.

35.    The detention officer placed Jones on the bench, handcuffed and started the medical watch.

36.    At this point, Dixon turned her attention to other duties and took no further action to tend to Antonio Jones' obvious serious medical needs.

37.    A few minutes later, a second detention officer informed Grant that they could not get Jones' vitals due to him shaking so bad, and that he was still sweating profusely. Grant's only action was to reply that Jones was already on medical watch, that he might have taken something, and that she was not the nurse on call.

38.    Two other detention officers in the book-in area were also concerned about the seriousness of Jones' condition and got Jones a cup of water. However, Jones was shaking so violently, that he, (Jones), could not hold it and spilled it on himself and the floor.

10

39.     At 4:05 pm, Jones' condition had deteriorated further, and he began making grunting sounds. Jones' condition continued to worsen and when he was checked, although the grunting had stopped, he was salivating heavily.

40.     At approximately 4:20 pm, Jones' blood pressure read 103/85 and pulse rate 91 as taken by the detention officer. According to the duty "medical book" Jones' blood pressure was within the normal range, not warranting calling the on duty nurse.

41.     At approximately 4:45 pm, the detention officer called Grant requesting that she come see Antonio Jones.

42.     At approximately 5:10 pm, a detention officer shakes Antonio Jones with no response. The detention officer popped ammonia capsules under Antonio Jones' nose 3 times with no response. Antonio Jones then began bleeding from mouth and nose and collapsed.

43.     A detention officer advised Grant of what had happened and she then arrive and Antonio Jones was un-cuffed, laid on floor, with CPR started, and shocked 10 times to no avail.

44.     At 5:24, Taylor Martin, the Faulkner County Attorney, authorized the jail Administrator, Chris Riedmueller, to release Antonio to the hospital.

11

45.    At 5:23, the Ambulance crew arrived to find Antonio Jones asystole. After 35 minutes Antonio Jones was pronounced dead.

## FEDERAL CIVIL RIGHTS
## VIOLATIONS UNDER 42 USC § 1983

46.    The Plaintiff specifically adopts by reference the contained in paragraphs three (3) through forty-four (45), infra.

47.    The above recited acts and omissions of Defendants, while each was acting under color of authority and in their individual and official capacities, respectively constitute a deprivation of Antonio Jones' constitutional rights to life and liberty, as guaranteed by the 4th, and 14th Amendments to the United States Constitution.

### Deliberate Indifference to serious medical needs:

### FAULKNER COUNTY

48.    Ryals is the legally constituted Sheriff of Faulkner County, Arkansas and functioned in that capacity at all times relevant hereto.

49.    As the chief law enforcement officer for Faulkner County, Ryals is the final decision and policy maker for the Faulkner County Sheriff's Department and the FCDC.  In that respect, Ryals' decisions establish the policies, procedures, rules, regulations, and standards for Faulkner County.

50.    Sheriff Ryals had a non-delegable duty to provide adequate medical

12

care for Faulkner County detainees. Ryals failed to adequately monitor, supervise, and control the FCDC medical staff to include Dr. Stewart in the delivery of proper, adequate, and timely health care services to County's detainees in custody at the FCDC. Ryall's failure to adequately monitor and supervise these healthcare providers was deliberate indifference to Antonio Jones' rights to life and liberty protected by the 4th, and 14th Amendments to the U.S. Constitution as well as federal laws.

51.    As a direct result of the defendants' deliberate indifference to his serious medical needs, Antonio Jones endured needless pain and suffering prior to his death.

52.    As a direct result of the defendants' deliberate indifference to his serious medical needs, Antonio Jones suffered the loss of his life.

53.    Per A.C.A. § 12-41-502, Ryals has the custody, rule, and charge of the jail within Faulkner County and all persons committed in said county, and he is authorized to appoint a jailer for whose conduct he is responsible.

54.    Per A.C.A. § 12-41-503 (a), Ryals, as all other County Sheriffs, as keepers or administrators of jails within the State of Arkansas, is responsible for managing the populations and operations of their respective facilities in compliance with the laws and the Arkansas Constitution and within the requirements of the United States Constitution.

13

55.     Ryals' adoption of the constitutionally inadequate policies of the

FCDC medical director, Dr. Garry Stewart, established the policies, culture, usage,

custom, and practice of the County Sheriff's Department and FCDC. Ryals'

unconstitutional acts were representative of and pursuant to this customary way of

handling detainees with serious medical conditions. These customs and practices

were of such longstanding that they had the force and effect of law.

56.     Furthermore, Ryals' acquiescence and tacit approval in these practices

and ways of handling serious medical issues of the detainees set policies and

procedures that were unconstitutional and were the moving force behind the

violation of Antonio Jones' clearly established rights and privileges protected by

the U. S. and Arkansas Constitutions.

57.     Faulkner County is thereby liable for all such decisions by Ryals as

well as the practices, customs, and usages which are the proximate cause and

motivating factor leading to Antonio Jones' death, damages and injuries.

58.     Pursuant to his contract with the County, Dr. Stewart was authorized

to deliver comprehensive medical, and medication services for all detained

individuals housed and detained at the FCDC.

59.     Under the authority of that contract, Dr. Stewart carried out a

traditional government function and thereby acts under color of state law. Dr.

Stewart's decisions set the medical policies, and standards which violated Antonio

14

Jones' rights protected by the 4th and 14th Amendments.

60.     Dr. Stewarts's medical protocols for the nursing staff as a choice of policy, are inadequate to meet commonly reoccurring health conditions of encountered in the jail population. Dr. Stewart's failure and refusal to enact adequate policies despite his awareness of the need reflects deliberate indifference to detainee's 4th and 14th amendment rights.

61.     Dr. Stewarts's protocols for the detention officers, the jail staff, as set out in the "Medical Book", as a choice of policy, are inadequate to meet commonly reoccurring health conditions of encountered in the jail population. Dr. Stewart's failure and refusal to enact adequate policies despite his awareness of the need reflects deliberate indifference to detainee's 4th and 14th amendment rights.

62.     Dr. Stewart's decision to require untrained detention officers to make medical assessments before they are permitted to refer detainees to the nurse reflects a deliberate choice to screen detainees who will be seen by the medical staff.

63.     Furthermore, Dr. Stewart's decision to prohibit detention officers from taking detainees with serious medical conditions to the ER without approval from the on duty nurse reflects a financial choice which protected the expenses of the FCDC at the expense of the health, safety and welfare of the detainees.

64.     Poor nursing and medical care are the obvious and expected outcome

15

of this financial decision. This policy of placing financial concerns over the health of the captive population reflects a policy indifferent to the rights of the jail population.

KAREN DIXON, LPN

65.     Dixon was aware of Antonio Jones' worsening medical condition, she failed to promptly inform the staff physician insure that Antonio Joes was timely seen by the doctor, or that he was promptly sent to the emergency room The foregoing failure, despite her awareness of Antonio Jones' serious medical condition, was deliberate indifference.

66.     Dixon was aware that Antonio Jones' medical condition were serious and needed proper medical care and attention. She was aware that despite his protestations, he had probably ingested some drug. Despite her awareness, she refused examine him herself or contact the medical director for instructions. Instead, she told the detention officers to place him on a 4 hour medical watch which consisted of seating him on a bench handcuffed and taking his vitals every 4 hours. As the proximate result of this deliberate indifference, within a matter of a couple of hours Antonio Jones was dead.

LEANN GRANT

67.     Grant was aware that Antonio Jones' medical condition were serious and needed proper medical care and attention. She was aware that despite his

16

protestations, he had probably ingested some drug. Despite her awareness,

abandoned Antonio Jones in the midst of his health crisis tended to other duties.

Her actions were deliberate and as the proximate result of this indifference, within

a matter of a couple of hours Antonio Jones was dead.

STATE LAW CLAIMS

VIOLATIONS OF THE ARKANSAS CONSTITUTION

68.     The Plaintiff specifically adopts by reference the allegations contained

in paragraphs three (3) through sixty-seven (67), infra.

69.     The aforesaid acts constitute violations of Ark. Const. Art. 2 § 2, the

right to Life and Liberty; Ark. Const. Art. 2 § 18, Privileges and Immunities

clause; Ark. Const. Art. 2 § 21, the right to Liberties and Privileges; and Ark.

Const. Art. 2 § 22, right to Life and Liberty. Plaintiff seeks redress pursuant to

Ark. Const. Art. 2 § 13.

VIOLATIONS OF THE ARKANSAS CIVIL RIGHTS ACT, (ACRA), A.C.A. §
16-123- 101 et seq.

70.     The Plaintiff specifically adopts by reference the allegations contained

in paragraphs three (3) through sixty-seven (67), infra.

71.     The aforesaid acts constitute violations of the Arkansas Civil Rights

Act (ACRA), codified at A.C.A. § 16-123- 101 et seq.

72.     Plaintiff seeks redress pursuant to A.C.A. § 16-123- 105(a), which

17

provides: Every person who, under color of any statute, ordinance, custom, or

usage of this state or any of its political subdivisions subjects, or causes to be

subjected, any person within he jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Arkansas Constitution shall be liable to

the party injured in an action in circuit court for legal and equitable relief or other

proper redress.

73.     The foregoing acts on the part of Dixon and Grant were in deliberate

indifference to Antonio Jones' obvious serious medical needs.

**MEDICAL MALPRACTICE**

**DUTIES OF GRANT AND STEWART**

74.     At all times relevant hereto, Stewart was acting as medical director or

the jail physician for the FCDC pursuant to a contract by and between himself and

the County.

75.     As medical director of FCDC, Stewart had a duty to form, adopt and

enforce policies and procedures for the medical care of detainees, including

Antonio Jones, at the FCDC.

76.     As medical director of FCDC, Stewart had a duty to assure that all

persons who performed any type of medical interventions for detainees were

adequately trained and supervised in the policies and procedures applicable to

detainees.

77.     At all times relevant hereto, Grant was employed by FCDC as an LPN.

**COUNT I-NURSE KAREN GRANT**

78.     As an LPN, Grant was responsible for the care and medical treatment of detainees at FCDC, including Antonio Jones,  and was further responsible to know, enforce and apply the policies and procedures adopted by FCDC to provide for the medical care of detainees.

79.     As an LPN, Grant was responsible to have knowledge of and apply the standard of care for the medical care and treatment of detainees, including Antonio Jones, at the FCDC.

80.     Nurse Grant, while acting in the course and scope of their employment with FCDC, was grossly medically negligent with a conscious and deliberate indifference to the health and life of Antonio Jones, in and of the following manners:

(a)     Failure to properly, timely and accurately evaluate Jones for distress requiring immediate medical intervention including but not limited to proper medical interventions including transfer to a local emergency room;

(b)     Failure to adopt a care plan to provide required medical assistance to save Jones' life;

(c)     Failure to take proper steps to secure other emergent assistance to render aid to Jones;

19

(d)    Failure to have adequate staff on call and within reach to render emergent aid and assistance to Jones;

(e)    otherwise failing to render proper medical care and nursing interventions in accordance with the local standard of care;

(f)    Failure to timely notify a physician or other qualified medical care provider regarding the distress of Jones;

(g)    Failure to enforce and apply policies regarding the times and events when medical providers should seek emergent medical intervention;

(h)    in failing to differentially diagnose the critical nature of the Jones' medical condition;

(i)    Failure to invoke the chain of command for and on behalf of Jones;

(j)    Failure to develop a plan of care designed to prevent harm to Jones;

(k)    in failing to advocate for the care and life of Jones;

(l)    Failure to assist Officers in obtaining Jones' vital signs;

(m)    Failure to go to Jones' side and evaluate him given the information she was provided by Officers;

(n)    Failure to evaluate Jones for a drug overdose as she recognized and related to Officers that he "probably has taken something";

(o)    Failure to follow policies on seizure activity, narcotic withdrawal, amphetamine withdrawal, and hypertension;

(p)    otherwise failing to follow the standard of care as it would require medical and nursing interventions to prevent harm to Jones.

20

81.    The events set forth above constitute gross medical negligence with a deliberate indifference to the life and health of Antonio Jones in that Nurse Grant, while in the course or scope of her employment with FCDC:

(a)    Grossly and with deliberate indifference departed from the acceptable and applicable standard of care in the proper pursuit and performance of their treatment and care of Jones;

(b)    Grossly and with deliberate indifference departed from the applicable standard of care and skill expected and required of similar medical providers;

(c)    Grossly and with deliberate indifference failed to act in accordance with the applicable standard of care required for medical care and treatment in Faulkner County, Arkansas, or in a similar locality; and,

(d)    On August 8, 2019, Nurse Grant, who was responsible for the care and treatment of Antonio Jones, having recognized and verbalized that he probably took something, failed to timely and properly evaluate  him for immediate medical intervention, failed to timely notify a qualified medical provider who could provide medical interventions to prevent harm; failed to render immediate care to Jones;  failed to develop a plan of care that was designed to prevent harm to Jones, failed to render treatment to safeguard his life and health, failed to timely notify a physician of his condition;  failed to invoke the chain of command in order to provide timely medical interventions to Jones , failed to advocate for the health and safety of Jones, failed to provide other timely medical interventions to prevent harm to Jones ,and failed to properly apply policies and procedures as this was the appropriate standard of care for Faulkner County, Arkansas, or for a medical provider or nurse practicing in a similar locality.

**COUNT II- DR. GARY STEWART**

82.    Stewart, while acting pursuant to contract with FCDC, as medical

director, was grossly medically negligent with a conscious and deliberate

indifference to the health and life of Antonio Jones, in and of the following

manners:

(a)    Failure to properly supervise and train Nurse Grant in rendering
       aid to persons who display clinical signs and symptoms
       experienced by Jones;

(b)    Failure to adopt policies and procedures that were designed to
       address the taking of vital signs by persons with no medical
       training such as Officers;

(c)    Failure to adopt policies and procedures designed to recognize
       or address the possibility that a detainee had taken something
       such as methamphetamine;

(d)    Failure to create an environment whereby Nurse Grant was
       willing and able to contact him in the event of an emergency;

(e)    By requiring that only a Nurse could approve emergent medical
       care for Jones;

(f)    Failure to adopt and enforce criteria to call the nurse when vital
       signs can not be accurately obtained;

(g)    Failure to adopt and enforce criteria whereby nursing
       evaluations of detainees are mandatory

(h)    Otherwise adopting, training and enforcing policies that would
       have caused Nurse Grant to render immediate and emergent
       care to Jones.

83.    The events set forth above constitute medical negligence in that

Stewart, while in the course or scope of his contract with FCDC:

(a) Grossly and with deliberate indifference departed from the acceptable and applicable standard of care in the proper pursuit and performance of his treatment and care of Jones;

(b) Grossly and with deliberate indifference departed from the applicable standard of care and skill expected and required of similar medical providers;

c) Grossly and with deliberate indifference  failed to act in accordance with the applicable standard of care required for medical care and treatment in Faulkner County, Arkansas, or in a similar locality; and, failed to properly supervise and train Nurse Grant in rendering aid to persons who display clinical signs and symptoms experienced by Jones; failed to adopt policies and procedures that were designed to address the taking of vital signs by persons with no medical training such as Officers; failed to adopt policies and procedures designed to recognize or address the possibility that a detainee had taken something such as methamphetamine; failed to create an environment whereby Nurse Grant was willing and able to contact him in the event of an emergency; required that only a Nurse could approve emergent medical care for Jones; failed to adopt and enforce criteria to call the nurse when vital signs can not be accurately obtained; failed to adopt and enforce criteria whereby nursing evaluations of detainees are mandatory and otherwise failed to adopt, train and enforce policies that would have caused Nurse Grant to render immediate and emergent care to Jones.

(d) On August 8, 2019, as this was the appropriate standard of care for Faulkner County, Arkansas, or for a medical provider or nurse practicing in a similar locality.

## DAMAGES, PROXIMATE CAUSE AND CLAIM FOR RELIEF

84.    As a proximate result of the aforesaid actions and gross and with

23

deliberate indifference negligence, Antonio Jones endured needless pain and suffering and lost his life.

85.    For the acts, omissions, customs and policies complained of herein, the Plaintiff seeks the following relief:

      a.    Compensatory damages for violation of her decedent's rights, privileges, and immunities protected by the United States and Arkansas Constitutions;

      b.    Compensatory damages for pain and suffering, emotional distress, hedonic damages, etc.;

      c.    Punitive damages;

      d.    Reasonable attorney's fees and costs; and,

      e.    All other damages to which Plaintiff and his heirs are entitled under both § 1983 and state common law.

WHEREFORE, Plaintiff, Sandra Jones, requests a judgment against Defendants, jointly and severally, for violation of his rights protected by the United States and Arkansas Constitutions; and for the pendant state tort claims of medical negligence and wrongful death and the Arkansas Civil Rights Act of 1993; for compensatory and punitive damages; for reasonable attorney's fees and costs; and for all other just and proper relief to which she may be entitled.

PLAINTIFF DEMANDS A JURY TRIAL.

24

Respectfully submitted for
Sandra Jones, Special Administrator of the Estate
of Antonio Jones, deceased, plaintiff herein

Morris W. Thompson Law Firm, P.A.
P. O. Box 662
Little Rock, AR  72203
(501) 661-8100
(501) 663-3544
E-mail:  mwthompsonlaw@sbcglobal.net
ABN:80145