IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SANDRA JONES, Personal Representative of
the Estate of ANTONIO L. JONES, Deceased                                    PLAINTIFFS

VS.                              Case No. 4:21-CV-444-BRW

FAULKNER COUNTY, ARKANSAS
Dr. GARRY STEWART, M.D., Individually,
KAREN GRANT, Individually,
and LEANNE DIXON, Individually                                              DEFENDANTS

# BRIEF IN SUPPORT OF MOTION FOR
# PARTIAL SUMMARY JUDGMENT - MEDICAL NEGLIGENCE
# OF SEPARATE DEFENDANT, DR. GARRY STEWART, M.D.

COMES separate defendant, Dr. Garry Stewart M.D., and, for his Brief in Support of Motion for Partial Summary Judgment - Medical Negligence, states:

## I. INTRODUCTION

A Statement of Undisputed Material Facts has been filed contemporaneously with this Brief in Support and is incorporated herein by reference.

On May 21, 2021, Sandra Jones, Personal Representative of the Estate of Antonio Jones, filed her complaint involving a combination of constitutional and state law claims against Faulkner County, including a claim for medical negligence against Dr. Garry Stewart under the Arkansas Medical Malpractice Act, Ark. Code Ann. §§16-114-201 *et seq*. Doc. 1. Dr. Stewart moves for partial summary judgment on plaintiff's claim for medical negligence as plaintiff's theory of liability is not recognized or covered by the Arkansas Medical Malpractice Act.[1]

By way of background, this case involves Mr. Jones death from a methamphetamine overdose at Faulkner County Detention Center in Conway, Arkansas. SUMF 7. On August 7, 2019,

---

[1] Dr. Stewart is also sued for §1983 claims not addressed in this motion.

35J3378.WPD

Antonio L. Jones was arrested in Russellville, Arkansas on a failure to appear warrant and was held overnight in the Pope County Jail.  SUMF 2. On August 8, 2021, a Faulkner County Sheriff's Department transport officer picked Antonio Jones up from the Pope County Jail and drove him to the Faulkner County Detention Center in Conway, Arkansas, arriving at approximately 9:46 am. *Id*. While in the booking department, at approximately 3:00pm,  Mr. Jones was placed under medical watch by nurse Karen Grant, an employee of the jail. SUMF 3.  At approximately 5:10 pm, Mr. Jones was non-responsive and paramedics were called; however, resuscitative efforts were unsuccessful and Mr. Jones was pronounced dead at 5:45 pm.  SUMF 4.  During this process, Nurse Grant did not call Dr. Stewart or consider calling Dr. Stewart regarding Mr. Jones. SUMF 5. Ex. A, Grant Deposition, 47:13-48:5; 65:17-24.  In fact, no one contacted Dr. Stewart and he did not know anything about Antonio Jones until he was served with plaintiff's complaint.  SUMF 6. Ex. B, Stewart Deposition, 91:6-11.

Dr. Charles P. Kokes, a physician with the State Crime Lab, performed an autopsy of Antonio Jones in Little Rock, Arkansas.  He concluded that Antonio Jones died from methamphetamine overdose from a bag of drugs he had ingested:

> Autopsy examination did not reveal any external or internal evidence of antemortem injury.  Exogenous obesity was noted, along with mile enlargement of the heart. Nonspecific vascular congestion and edema involved the lungs.  Examination of the stomach contents revealed a small clear plastic bag.  This bag was open and initially found and contained no gross residual material. Toxicology testing revealed a lethal level of methamphetamine in blood, along with its metabolite amphetamine. Nicotine and caffeine were also present.  Ethanol was not present.
>
> It is likely that the bag recovered from the stomach had contained methamphetamine, and that he had swallowed the bag intentionally to avoid  detection when taken into custody by law enforcement.  The drug then leached out of the bag, causing overdose and death.  Since the overdose was probably not intentional, the manner of death will be classified as an accident.

SUMF 7. Ex. C, Autopsy Report.

The complaint does not allege that Dr. Stewart ever provided medical care to Antonio Jones. Instead, claims were brought against Dr. Stewart based on his contractual role as Medical Director for the Faulkner County Detention Center ("FCDC"). Specifically, plaintiff's complaint alleges medical negligence against Dr. Stewart beginning with paragraph 74. Doc 1, ¶ 18. Under the subsection titled "Duties of Grant and Stewart," the Complaint states "Stewart was acing as medical director or the jail physician for the FCDC pursuant to a contract by and between himself and the County"; "As medical director of FCDC, Stewart had a duty to form, adopt and enforce policies and procedures for the medical care of detainees, including Antonio Jones, at the FCDC"; and "As medical director of FCDC, Stewart had a duty to assure that all persons who performed any type of medical interventions for detainees were adequately trained and supervised in the policies and procedures applicable to detainees." Doc. 1, ¶¶ 74-76.

The Complaint then states the following alleged acts of medical malpractice:

(a) Failure to properly supervise and train Nurse Grant in rendering aid to persons who display clinical signs and symptoms experienced by Jones;

(b) Failure to adopt policies and procedures that were designed to address the taking of vital signs by persons with no medical training such as Officers;

(c) Failure to adopt policies and procedures designed to recognize or address the possibility that a detainee had taken something such as methamphetamine;

(d) Failure to create an environment whereby Nurse Grant was willing and able to contact him in the event of an emergency;

(e) By requiring that only a Nurse could approve emergent medical care for Jones;

(f) Failure to adopt and enforce criteria to call the nurse when vital signs can not be accurately obtained;

(g) Failure to adopt and enforce criteria whereby nursing evaluations of detainees are mandatory;

>   (h)   Otherwise adopting, training and enforcing policies that would have caused Nurse Grant to render immediate and emergent care to Jones.

Doc. 1, ¶ 82. Through the course of discovery, plaintiff disclosed Dr. S. Michael Blanchard, as an expert witness. *See* SUMF 8; Ex. D, Dr. Blanchard's Report. The expert report, purportedly drafted by Dr. Blanchard, tracks the plaintiff's complaint and relies on Dr. Stewart's contract with Faulkner County to establish an underlying duty owed by Dr. Stewart in this case. *Id*. Paragraphs 6, 7, and 8 set out the duties that Dr. Blanchard believes were owed by Dr. Stewart in this case. All three paragraphs refer and rely directly on Dr. Stewart's contract with Faulkner County ("6. According to Dr. Stewart's contract..."; "7. Dr. Stewart's contract required him to perform the following duties..."; "8. Dr. Stewart's contract provided the following..."). *Id.* SUMF 8-9. At his deposition, Dr. Blanchard candidly acknowledged that without the contract outlining Dr. Stewart's position as Medical Director, it would be difficult to say that Dr. Stewart had any relationship with Mr. Jones. SUMF 14; Ex. E, Blanchard Deposition, 48:24-49:3; 120:13-21.

The Arkansas Medical Malpractice Act, Ark. Code Ann. §§16-114-201 *et seq.*, is not a catch all for plaintiff to try all of her claims in this case against Dr. Stewart. The Arkansas Medical Malpractice Act covers specific claims and conduct. Plaintiff attempts to expand her claim for medical negligence and any duty owed by Dr. Stewart based on the laws, regulations, and policies governing the jail and Dr. Stewart's contract with Faulkner County, both of which are improper to expand the duty owed under the Arkansas Medical Malpractice Act. Whether these claims fall within the Arkansas Medical Malpractice Act was specifically addressed recently by Judge D.P. Marshall, who found that they "sounded in something other than medical malpractice because there was no doctor-patient relationship undergirding those claims." *Turner v. Stewart*, No. 4:18-cv-468-DPM, Doc. 94 (E.D. Ark. Sept. 8, 2021). Judge Marshall's opinion is discussed in detail in section III(C)

below. For the reasons stated herein, Dr. Stewart respectfully moves for partial summary judgment on plaintiff's claim for medical negligence.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

## III. ARKANSAS MEDICAL MALPRACTICE ACT

The Arkansas Medical Malpractice Act, Ark. Code Ann. §16-114-201 *et seq.*, applies to all causes of action for medical injury. *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead Cty., W. Div.*, 348 Ark. 197, 203, 73 S.W.3d 584, 587-88 (2002). Under the Act, a "medical injury" means:

> ...any adverse consequences arising out of or sustained <u>in the course</u> of the professional services being rendered by a medical care provider <u>to a patient</u> or resident, whether resulting from negligence, error, or omission in the performance of such services; or from rendition of such services without informed consent or in breach of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

Ark. Code Ann. § 16-114-201 (emphasis added).

To sustain a claim for medical negligence against Dr. Stewart, plaintiff must first establish that Mr. Jones and Dr. Stewart had a physician-patient relationship and that Dr. Stewart owed him

a legal duty. *See Chatman v. Millis*, 257 Ark. 451, 517 S.W.2d 504 (1975). In *Chatman*, the court noted that to sustain a claim for medical negligence, "a doctor-patient relationship must exist, *i.e.*, there must be a duty, as a doctor, owed from the practitioner to the patient." *Id*. The *Chatman* Court found that "under the facts alleged, appellee owed no duty, as a doctor, to appellant, and this duty must be in existence before appellant can recover because of negligence, constituting malpractice." *Id.* In affirming *Chatman*, the Arkansas Court of Appeals noted that "[t]he broad holding of *Chatman* is that a medical provider owed no duty to a person who was not its patient. The Supreme Court stated that where the defendant doctor 'made no examination' of the plaintiff and in fact did not know him or had never seen him, the plaintiff was not a 'patient.'" *Thompson v. Sparks Regional Medical Center*, 2009 Ark. App. 190, 302 S.W.3d 35.

Here, Dr. Stewart did not have a physician-patient relationship with Mr. Jones. A jail is not a hospital or a nursing home or a medical provider under the Arkansas Medical Malpractice Act. Ark. Code Ann. §16-114-201. The doctor at the jail is not the personal physician for every inmate immediately upon admittance.[2] He does not make daily rounds like a hospital or monthly rounds like a nursing home. FCDC is a large detention facility, with a constantly changing population, some of whom may at some point during their detention need to see a physician for medical care. Inmates do not see the doctor, or even the nurse, until they request it, except in emergencies. Dr. Stewart did not have a physician-patient relationship with Mr. Jones solely upon his admittance to the jail. Dr. Stewart was not informed of Mr. Jones' arrival or called regarding his condition. SUMF 5-6. To the extent Dr. Stewart had general knowledge of the booking process at intake or played any role in its development, his involvement was generic and administrative and not specifically related to Mr.

---

[2] Dr. Stewart contract required him to be at the facility four hours a week. Otherwise, he was on call. He was not at the facility on the day in question.

Jones. *Paulino v. QHG of Springdale, Inc.*, 2012 Ark. 55, 386 S.W.3d 462 (2012). This alone precludes any claim for medical negligence unrelated to Dr. Stewart's personal involvement with the detainee.

**A. Medical Injury under the Arkansas Medical Malpractice Act, A.C.A. §16-114-201.**

Plaintiff's attempt to hold Dr. Stewart liable under the Medical Malpractice Act for what occurred at the jail outside of his personal care and treatment of Mr. Jones is not a "medical injury" covered by the Arkansas Medical Malpractice Act. In determining whether an injury is an adverse consequence arising out of or sustained <u>in the course of professional services</u> being rendered by a medical provider, it must be determined whether the injury was the result of (1) a professional service, (2) a doctor's treatment or order, or (3) a matter of medical science. *Paulino v. QHG of Springdale, Inc.*, 2012 Ark. 55, 386 S.W.3d 462 (citing *Howard v. Ozark Guidance Ctr.*, 326 Ark. 224, 228, 930 S.W.2d 341, 343 (1996)). In *Paulino*, the Arkansas Supreme Court noted that it has "consistently rejected claims that an injury constituted a 'medical injury' when the injury did not originate with a doctor's order. Compare *Bailey*, 307 Ark. 14, 817 S.W.2d 412, and *Wyatt,* 315 Ark. 547, 868 S.W.2d 505, with *Sexton*, 275 Ark. 361, 631 S.W.2d 270." *Id*. The plaintiff in that case raised a claim against a facility for negligent credentialing. The court determined that the decision to credential the doctor "was not, at its genesis, a decision to pursue a method of treatment, care, or course of medical action *relating to a specific patient*." *Id*. (emphasis added).

Plaintiff will argue that Dr. Stewart was responsible for approving protocols for the jail and that this is a "professional service" covered by the Arkansas Medical Malpractice Act. This is a misstatement of the law. First, as discussed above, Dr. Stewart did not have a physician-patient relationship with Mr. Jones at that time. Second, as stated in *Paulino*, the process for medical screening "was not, at its genesis, a decision to pursue a method of treatment, care, or course of

medical action relating to a specific patient." *See* 2012 Ark. 55, 386 S.W.3d 462. The medical screening/booking process is conducted for all inmates by staff at the jail. Dr. Stewart has no involvement in this process and was not involved in the process for Mr. Jones. No part of this process was a "decision to pursue a method of treatment, care, or course of medical action relating to a specific patient" made by Dr. Stewart. To the extent plaintiff believes the jail staff or nurses did not properly perform their duties with respect to Mr. Jones, she is pursuing those claims. *See* Doc. 1. Dr. Stewart's purported role in the intake/booking process and whether that process was properly conducted in this case is not a valid claim for medical injury against Dr. Stewart under the Arkansas Medical Malpractice Act. Whether that is a basis for a §1983 claims is not part of this motion.

### B. Duty owed under the Arkansas Medical Malpractice Act and AMI 1501

Plaintiff is attempting to create a medical malpractice claim where one does not exist by expanding the duty owed by Dr. Stewart beyond the scope of the Arkansas Medical Malpractice Act. Plaintiff's burden of proof in her claim for medical negligence is codified by statute. *See* Ark. Code Ann. § 16-114-206. Arkansas Model Instruction 1501 sets out the duty and standard of care owed by a medical care provider:

> In diagnosing the condition of and treating <u>a patient</u>, a physician must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing, engaged in the same specialty in the locality in which he practices, or in a similar locality. A failure to meet this standard is negligence. (Emphasis added)

To sustain a claim for medical negligence against Dr. Stewart, plaintiff must first establish that Dr. Stewart owed Mr. Jones a duty as a patient. See *Chatman v. Millis*, 257 Ark. 451, 517 S.W.2d 504 (1975). If this duty exists, she must prove, through expert testimony, (1) the applicable standard of care, (2) that the medical provider failed to act in accordance with the standard; and (3) that such failure was a proximate cause of the plaintiff's injuries. *See e.g. Williamson v. Elrod*, 348 Ark. 307,

72 S.W.3d 489 (2002). Plaintiff attempts to use Dr. Stewart's position as Medical Director to add to AMI 1501 in two ways - first, by statute, regulation, and internal policy, and second, under Dr. Stewart's contract with Faulkner County. There is no basis in Arkansas law to use either argument to change whether any duty was owed by Dr. Stewart to Mr. Jones under AMI 1501 and create a new claim for medical negligence.

*1. Laws, regulations and internal policies and procedures*

Dr. Stewart by contract was the Medical Director for the jail during Mr. Jones's detention. Through discovery, plaintiff's have referenced the Arkansas Criminal Detention Facility Standards ("CDFS"). Arkansas Code Annotated § 12-26-101 states:

(a)    It is declared to be the policy of the State of Arkansas that all criminal detention facilities within the counties of the state shall conform to certain minimum standards of construction, maintenance, and operation.

Under the CDFS, Section IX of the standards delineates the obligations of the chief executive of the facility with regards to medical, dental, and healthcare services. Section 9-1001 requires the chief executive to "establish a written plan for making all medical, dental, and mental health services available for inmates." With Dr. Stewart's input, the Chief Executive of the jail developed jail policies, procedures, and protocols governing the healthcare provided to inmates.

Based on Dr. Stewart's position as the Medical Director, plaintiff argues liability for Dr. Stewart for all maintenance and operation of healthcare provided to inmates at the jail and for any failure by jail staff or medical professionals to follow proper protocols and provide proper care. Under Arkansas law, Plaintiff cannot use the CDFS, the detention center's internal policies and protocols, or the opinions of her expert witness, Dr. Blanchard, to expand Dr. Stewart's liability for medical negligence to support an attempt to recover for the claims she is making in this case under the Arkansas Medical Malpractice Act.

Federal laws and regulations and a facility's internal policies, procedures, and protocols do not create a duty or set the standard of care in medical malpractice cases. *See Bedell v. Williams*, 2012 Ark. 75, at 6, 386 S.W.3d 493, 499. In *Bedell*, a nursing home case, the Arkansas Supreme Court held that 42 C.F.R. § 483.75(d), a federal Medicaid/Medicare regulation, could not create a duty in <u>tort</u>. 2012 Ark. 75, at 7, 386 S.W.3d at 499. On appeal, the plaintiff argued that the federal regulation set a duty that required the nursing home to implement "policies and procedures regarding the management and operation of the facility." *Id.* After reviewing the regulation, the Arkansas Supreme Court held as follows:

> [I]t is clear to this court that this regulation is a rule that nursing homes must follow to qualify for participation in Medicare and Medicaid, and we will not interpret it to create a duty in tort. The funding regulations specifically limit themselves to "serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements for participation in Medicare and Medicaid." 42 C.F.R. § 483.75(d).

*Id.* The plaintiff also relied on the defendant-facility's internal policy to seek to impose a duty upon the defendant. *Id.* at 8, 386 S.W.3d at 500. Likewise, the Arkansas Supreme Court held that "[g]enerally, internal policies should not create a legal duty where none exists," and declined to accept plaintiff's argument *Id.* (citing *Young v. The Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 205 S.W.3d 741 (Ark. 2005); *Arkansas Louisiana Gas Co. v. Stracener*, 239 Ark. 1001, 395 S.W.2d 745 (Ark. 1965)).Moreover, the court held that the plaintiff could not bypass the impropriety of using internal facility policies or government regulations to impose a duty by using an expert witness:

> While much is made of Dr. Loren Lipson's, [plaintiff's] expert, testimony regarding her opinion that a legal duty was created, we take this opportunity to note that the fact that an expert testifies that a duty existed does not make it so. A jury question is not created simply because an expert believes a legal duty exists.

*See Bedell*, 2012 Ark. 75, at 6, 386 S.W.3d 493, 499 (citing *Young*, 361 Ark. 209, 205 S.W.3d 741).

Dr. Stewart anticipates that plaintiff will attempt to elicit testimony from her expert, Dr.

Blanchard, that the Arkansas Detention Facility Standards and Dr. Stewart's dual role as Medical Director and doctor set the standard of care for Dr. Stewart and create liability under the Medical Malpractice Act for the care Mr. Jones received at the jail. Consistent with the Arkansas Supreme Court holding in *Bedell*, the Arkansas Detention Facility Standards developed pursuant to Arkansas Code Annotated § 12-26-101, and the internal policies, procedures, and protocols of the facility do not establish a duty owed by Dr. Stewart to Mr. Jones or set the standard of care. While the documents may have some contested relevance to the claims made against Faulkner County, they have no relevance to the medical negligence claim against Dr. Stewart. Whether or not there were jail policies and protocols in place or whether or not they were appropriate or appropriately followed by the staff of the jail are not relevant and not at issue in a medical negligence claim pursuant to *Bedell*.

*2. Dr. Stewart's contract with Faulkner County*

Plaintiff and her expert witness rely on Dr. Stewart's contract with Faulkner County to establish the duties underlying her claims for medical malpractice. Like plaintiff's attempt to use regulations and internal policies to expand the duty owed under AMI 1501, there is no basis in Arkansas law for using a contract to set the standard of care for a treating physician. A contract does not set the standard of care. Ark. Code Ann. § 16-14-206; AMI 1501.  Faulkner County and Dr. Stewart can agree to whatever terms or level of care they want, but it does not create, change or set the duty owed by Dr. Stewart to Mr. Jones and create a medical negligence claim where there is none.

Essentially, plaintiff is claiming that Mr. Jones is an intended third-party beneficiary to the contract with rights to enforce its terms, but is restating this theory as a tort-claim for medical negligence. Plaintiff has never brought a claim as an intended third beneficiary to the contract and

that issue is not before the court. Even if it were properly plead, plaintiff would not be entitled to recover under the contract. Under Arkansas law, a plaintiff may plead a claim for damages for a breach of contract as a third-party beneficiary where she proves (1) a valid contract; (2) the contracting party <u>clearly intended</u> to benefit the plaintiff under the contract; (3) the contract required the defendant to perform or not to perform a certain act; and (4) there was <u>a breach of contract</u> by the defendant. *See* AMI 2410.

"Whether a person is a third-party beneficiary to a contract is often a question of law for the court." *Kremer v. Blissard Management & Realty, Inc.*, 289 Ark. 419, 711 S.W.2d 813 (1986). See also *Little Rock Wastewater Utility v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995); *Howell v. Worth James Const. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976).  The Court has "repeatedly held that the presumption is that parties contract only for themselves and, thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995); *Howell v. Worth James Constr. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976).

Two elements are necessary to apply the third-party-beneficiary doctrine: there must be an underlying valid agreement between two parties and there must be evidence of a clear intention to benefit a third party. *Broadway Health & Rehab, LLC v. Roberts*, 2017 Ark. App. 284, 7, 524 S.W.3d 407, 412 (2017) (citing *Progressive Eldercare Serv.-Chicot, Inc. v. Long*, 2014 Ark. App. 661, at 4, 449 S.W.3d 324, 327). A contract is actionable by an <u>intended</u> beneficiary of a contract, but not by an <u>incidental</u> beneficiary. *Rentco, Inc. v. Farmers Ins. Co.*, 2013 Ark. App. 628, 6 (2013).

At the time Faulkner County and Dr. Stewart entered their agreement in 2005 and renewed every year, Mr. Jones was, if anything, an incidental beneficiary, not an intended third-party

beneficiary of the agreement, and thus his estate is not entitled to bring an action for breach of contract. Mr. Jones was a member of a large class of individuals—possible future inmates who could in the future receive some of the medical care services at the jail. See *Elsner v. Farmers Ins. Grp., Inc.*, 364 Ark. 393, 397, (2005). She alleges no facts sufficient to overcome the presumption that Faulkner County and Dr. Stewart contracted only for the benefit of themselves. See *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995); *Howell v. Worth James Constr. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976).

Consistent with other jurisdictions on this point, persons receiving medical treatment pursuant to an employment contract between a facility and a physician are only incidental beneficiaries of the contract. See *Jenkins v. Best*, 250 S.W.3d 680, 696 (Ky.Ct.App.2007) (holding that a hospital patient was not a third-party beneficiary of a contract between a hospital and a contracting physicians' group); *Oja v. Kin*, 229 Mich. App. 184, 186 (1998) (rejecting the proposition that the patient was an intended third-party beneficiary of the contract between the hospital and on-call physician). The mere reference to a party in a contract does not make that party a third-party beneficiary with a right to enforce that contract. *Matter of Overton*, 169 B.R. 196, 201 (Bankr. D. Neb. 1994) (citing *Alder v. First Nat. Bank & Tr. Co. of Kearney*, 241 Neb. 873 (1992)). The *Jenkins* Court in Kentucky explained the reasoning for this outcome:

> The contract was designed to allow Baptist Hospital to represent itself, and be accredited, as a hospital capable of providing perinatal services to its patients. It was neither directly nor primarily for the benefit of the patients themselves. *Krahwinkel v. Commonwealth Aluminum Corp.*, 183 S.W.3d 154, 162 (Ky.2005) ("Under Kentucky law, before a third person who is not a party to a contract can derive benefit from that contract, the third person must show that the contract was made and entered into directly or primarily for the benefit of the third person.").

Courts in other jurisdictions have come to a similar conclusion:

> We agree with the trial court's statement that "the mere reference to a party in a contract will not confer third-party beneficiary status. In our view, the contract as a

whole expresses only the intent of RIC to provide for patient transport using the services of Superior Ambulance. In the absence of an express provision, we find that the contract between Superior and RIC did not intend to confer a direct benefit to the "patient" being transported, rather, the benefit was, as the trial court found, the "transportation of patients in exchange for payment." Carlson was not an intended third-party beneficiary, and thus lacks standing to sue."

*Carlson v. Rehab. Inst. of Chicago*, 2016 IL App (1st) 143853 (Ill. App. 2016).

The mere reference to Target's right to repurchase the fixtures and the fact the repurchase would ultimately require title to flow from Gilman through Dayton are not enough to make Gilman an intended third-party beneficiary of the User Lease. Instead, Gilman is merely an incidental beneficiary of the User Lease. For example, when "B contracts with A to buy a new car manufactured by C[,] C is an incidental beneficiary, even though the promise can only be performed if money is paid to C." Restatement (Second) of Contracts § 302(1), illus. 17.

*Dayton Dev. Co. v. Gilman Fin. Servs., Inc.*, 419 F.3d 852, 856 (8th Cir. 2005).

Plaintiff has provided no evidence that at the time Faulkner County and Dr. Stewart entered their contract, Mr. Jones was an intended third-party beneficiary to Dr. Stewart's contract, other than Ms. Jones position as a potential inmate who may need medical care. This is insufficient to overcome the presumption that parties contract only for themselves. Additionally, there is no evidence that during the entire period of the contract, Faulkner County ever had any complaints about their dealings with Dr. Stewart to suggest that Dr. Stewart was ever in breach of his contractual obligations. SUMF 1. The contract was renewed annually until Dr. Stewart retired from working at the facility. *Id*.

3. Opinions of Dr. Blanchard

As stated in *Bedell*, "the fact that an expert testifies that a duty existed does not make it so. A jury question is not created simply because an expert believes a legal duty exists." 2012 Ark. 75 at 6, 386 S.W.3d 493, 499. Plaintiff cannot overcome clear Arkansas law on this issue simply by having Dr. Blanchard testify that he believes there was a physician-patient relationship between Dr. Stewart and Mr. Jones. By the clear language of Dr. Blanchard's report and his deposition

testimony, he is not offering an opinion that is covered under the Arkansas Medical Malpractice Act.

Paragraphs 6, 7, and 8 of Dr. Blanchard's report set out the duties that Dr. Blanchard believes were owed by Dr. Stewart in this case. All three paragraphs refer and rely directly on Dr. Stewart's contract with Faulkner County. Ex. F; SUMF 9. Based on these duties, Dr. Blanchard identified his believed breaches of the standard of care in paragraph 9 of his report. Dr. Blanchard acknowledged at his deposition that Dr. Stewart's contract is the source of the duties he identified in paragraphs 6, 7, and 8 of his report. Ex. E, Blanchard Deposition, 28:11-29:4. SUMF 10. Dr. Blanchard acknowledged that based on his review of the records, there is no indication that Faulkner County ever considered Dr. Stewart to be in breach of his contract. *Id*. at 29:11-15; SUMF 11.

For purposes of his opinions, Dr. Blanchard acknowledges that he is taking the position that every detainee is a patient of the doctor working at the jail. *Id* at 24:15-18; SUMF 12. Dr. Blanchard agrees there is evidence that Dr. Stewart did not see Antonio Jones in the jail, that Dr. Stewart was not called by Nurse Grant or anyone at the jail about Mr. Jones, and that Dr. Stewart was not aware of Mr. Jones presence at the jail. Ex. E, Blanchard Deposition, 25:20 - 26:6. SUMF 14. Dr. Blanchard acknowledges that Dr. Stewart did not provide any personal medical care to Mr. Jones and that, absent his breach of contract theory, Dr. Stewart and Mr. Jones did not have a physician-patient relationship. Ex. E, Blanchard Deposition, 48:24-49:3; 120:13-21. SUMF 15. Finally, Dr. Blanchard acknowledges that he is applying the laws, rules, and regulations in place when he last practiced in a jail in 2002, and that he never practiced under the legal and regulatory framework in place at the time of Mr. Jones detention that he is claiming sets the standard of care. *Id*. at 40:22-25; 118:8-119:14.

This is not an issue of the Court having to weigh the opinions of each side's expert witness. Whether a legal duty exists, can be decided as a matter of law. However, to further show the Court

that Dr. Blanchard's theory of liability is not valid, Dr. Stewart disclosed Dr. Judd Bazzel. *See* Ex. G, Bazzel Report. Dr. Bazzel would testify that there was not a physician-patient relationship between Dr. Stewart and Mr. Jones, that Dr. Stewart appropriately fulfilled his duties as medical director pursuant to his contract with Faulkner County, and that nothing Dr. Stewart did or allegedly failed to do was the proximate cause of Mr. Jones' death. *Id*.

### C. Prior precedent in Eastern District of Arkansas

The same arguments raised by plaintiff and her expert witness regarding the scope of the medical malpractice act in relation to Dr. Stewart's position at FCDC were recently addressed in a separate case in front of Judge Marshall. *Turner v. Stewart*, No. 4:18-cv-468-DPM, Doc. 94 (E.D. Ark. Sept. 8, 2021). In *Turner*, the detainee was at the detention center for several weeks before seeing Dr. Stewart. The plaintiff settled all of her claims against Faulkner County except for the medical malpractice claim against Dr. Stewart. The plaintiff argued that as Medical Director, Dr. Stewart was responsible under the medical malpractice act for what occurred before his personal involvement, including the booking process.

The parties provided briefs to the Court regarding the scope of the remaining medical malpractice claim. Like plaintiff in this case, the *Turner* plaintiff argued that based on Dr. Stewart's contract, the applicable state and federal regulations, and Dr. Stewart's position as Medical Director, he should be liable under the medical malpractice act for everything that occurred at the jail. Judge Marshall disagreed. *Id*. Citing *Chatman v. Millis*, Judge Marshall found that the doctor-patient relationship was not established until Dr. Stewart became aware of the detainee's presence and responded with direct care and treatment. Judge Marshall found that "the remainder of plaintiff's claims sounded in something other than medical malpractice because there was no doctor-patient relationship undergirding those claims":

> The remainder of Turner's claims sound in something other than medical malpractice because there was no doctor-patient relationship undergirding those claims. *Thompson v. Sparks Regional Medical Center,* 2009 Ark. App. 190, at *5, 302 S.W.3d 35, 38. There was no doctor-patient relationship on Warner's intake at the jail. A person doesn't become a doctor's patient just by virtue of their detention and participation in routine screening. Similarly, Dr. Stewart's role as medical director and policymaker for the jail doesn't create a doctor-patient relationship between him and every detainee. National standards, jail rules, or center protocols don't create that kind of legal duty. *Bedell v. Williams,* 2012 Ark. 75, at *6, 386 S.W.3d 493,499. Neither does Dr. Stewart's contract with the jail. *Broadway Health & Rehab, LLC v. Roberts,* 2017 Ark. App. 284, at *7, 524 S.W.3d 407, 412. The filing of a medical grievance, by itself, also doesn't establish the relationship required by the Act. Any allegations stemming from Dr. Stewart's role overseeing Faulkner County Detention Center staffers' contacts with Warner, beyond his direct care and treatment of her, exceed the Act's boundaries.

*Id*. As detailed in Judge Marshall's order, the case proceeded to trial on the medical malpractice claim starting with Dr. Stewart's actual care and treatment of the plaintiff. In this case, Dr. Stewart never saw or even knew of Mr. Jones' presence at the jail. There is simply no physician-patient relationship undergirding any of plaintiff's claims

## IV. CONCLUSION

Dr. Stewart was not aware of Mr. Jones presence in the Faulkner County Detention Center until being served with this lawsuit. Plaintiff's complaint alleges a long list of constitutional and state law claims, including a claim for medical negligence under the Arkansas Medical Malpractice Act against Dr. Stewart. Plaintiff's theory of liability for medical negligence stems from his contract with Faulkner County and his role as Medical Director. However, discovery has confirmed what plaintiff's complaint admits on its face, that Dr. Stewart never had a physician-patient relationship with Mr. Jones as required under Arkansas law to sustain a claim for medical negligence. Summary judgment on this claim is appropriate.

WHEREFORE, this defendant prays that his Motion for Partial Summary Judgment - Medical Malpractice be granted, and for all other proper relief.

-18-

                Paul D. McNeill (79206)
                Dustin R. Darst (2008141)
                REECE MOORE McNEILL PENDERGRAFT
                710 Windover Road, Suite B
                Jonesboro, AR 72401
                telephone:   (870)394-5200
                facsimile:    (870)520-6250
                email:        pmcneill@rmp.law
                email:        ddarst@rmp.law

                By: /s/ Paul McNeill

                  *Attorneys for Separate Defendant,*
                  *Garry Stewart, M.D.*

**CERTIFICATE OF SERVICE**

     In accordance with the Arkansas Rules of Civil Procedure, I hereby certify that, on the 27th day of October, 2022, a true and accurate copy of the above and foregoing document was provided, as indicated below, to the following attorney of record:

\_\_\_\_\_ Regular Mail      \_\_\_\_\_ Electronic Mail      \_\_\_\_\_ Facsimile
  **x**   **the Court's CM/ECF filing system**

| | |
|---|---|
| Mr. Morris Thompson<br>THOMPSON LAW FIRM, P.A.<br>Post Office Box 662<br>Little Rock, AR 72203-0662<br>facsimile: (501) 663-3544<br><br>Mr. Randy Hall<br>HALL & TAYLOR LAW PARTNERS, PLLC<br>Post Office Box 242055<br>Little Rock, AR 72223<br>facsimile: (501) 404-2336<br><br>   *Attorneys for Plaintiffs* | mwthompsonlaw@sbcglobal.net<br><br><br><br><br><br>Randy@littlerocktriallawyers.com |
| Mr. Jason E. Owens<br>JASON OWENS LAW FIRM, P.A.<br>Post Office Box 850<br>Conway, AR 72033-0850<br>facsimile: (501) 746-9173<br><br>   *Attorneys for Separate Defendants, Faulkner County, Arkansas, Dr. Garry Stewart, M.D., Karen Grant, and Leanne Dixon* | owens@jowenslawfirm.com |

 

                                       */s/ Paul McNeill*
                                        Paul McNeill