```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF ARKANSAS
                    CENTRAL DIVISION

SANDRA JONES, Personal         ) PLAINTIFF
Representative of the          )
Estate of ANTONIO JONES,       )
Deceased                       )
                               )
VS.                            ) Case No. 4:21-CV-444-BRW
                               )
FAULKNER COUNTY, ARKANSAS;     )
DR. GARRY STEWART, M.D.,       )
Individually; KAREN GRANT,     )
Individually; and LEANNE       )
DIXON, Individually            ) DEFENDANTS.
```

---

ORAL DEPOSITION OF

S.M. BLANCHARD, M.D.

OCTOBER 10, 2022

---

ORAL DEPOSITION OF S.M. BLANCHARD, M.D., produced as a witness at the instance of the Defendants, and duly sworn, was taken in the above-styled and numbered cause on October 10, 2022, from 2:08 p.m. to 5:10 p.m., before Crystal Garrison, Certified Court Reporter, in and for the State of Arkansas, reported by machine shorthand, at the law offices of RMP, LLP; 710 Windover Road, Suite B; Jonesboro, Arkansas 72401, pursuant to the Federal Rules of Civil Procedure.

1  family practice clinic, when I walked into the emergency
2  room. I mean, the minute I punched in, walked in the
3  door, I may not have seen the patients in the waiting
4  room, but they are my patients.
5  Q.   All right.
6  A.   And my responsibility.
7  Q.   All right. Are you equating a jail and the medical
8  care in the jail to medical care in a hospital?
9  A.   Well, it depends on the contract of what you've
10 agreed to do in the jail. And, in my opinion, that -- I
11 mean, detainees don't have the opportunity to say, hey,
12 I want to go see my doc; I want to go somewhere else; I
13 want to go to the emergency room, you know, just on
14 their own volition.
15      But, I mean, I'm saying that my -- my job as a
16 medical director in the jail was to make sure that all
17 those people, known or unknown to me, that had medical
18 care that would equal the standards on the outside,
19 whether they're in the detention or not.
20 Q.   All right. Can we agree, Doctor, that Dr. Stewart
21 did not see Mr. Jones in the jail?
22 A.   Yes, I do.
23 Q.   All right. We can agree that Dr. Stewart was not
24 called by Nurse Grant or anyone at the jail?
25 A.   Yes, I'm aware of that.

1  Q.   We can agree that Dr. Stewart was not aware of
2  Mr. Jones' presence at the Faulkner County Detention
3  Center?
4  A.   I believe so.
5  Q.   We can agree?
6  A.   Yes.
7  Q.   Okay.  And we're going to talk about your opinions
8  about the duty under the contract and him being a
9  medical director.
10 A.   Right.
11 Q.   But in terms of Dr. Stewart wearing his doctor hat,
12 clinic hat, he did not provide any professional services
13 to Mr. Jones while he was at the jail.
14      Can we agree on that?
15 A.   No.
16 Q.   We're going to come back to that on what exactly you
17 mean as a professional service.
18 A.   Okay.
19      MR. THOMPSON:  Where's your restroom?
20      MR. DARST:  Let's go off the record.
21                     (Brief pause.)
22 Q.   (BY MR. DARST)  So let's talk about your opinion
23 here.
24 A.   Okay.
25 Q.   Just by way of introduction, I think we've covered

1  Q.    Yeah.  It looks like -- going down where it starts
2  some of your standard of care opinions, it looks like
3  paragraphs 3, 4, and 5 deal with Nurse Grant; correct?
4  A.    Okay.  Right.
5  Q.    Is that correct?
6  A.    Yes.
7  Q.    Okay.  So, looking at paragraph 6, this looks like
8  kind of where the meat of your opinions against
9  Dr. Stewart stand.
10 A.    Yes.
11 Q.    All right.  In all three -- in paragraphs 6, 7, and
12 8 you reference Dr. Stewart's contract.
13 A.    Yes.
14 Q.    Is that correct?
15 A.    Yes.
16 Q.    And are the duties that you are opining on today,
17 are they based on Dr. Stewart's contract with the
18 County?
19 A.    Reword that.  Say that -- I'm not sure I understood
20 that.
21 Q.    All right.  Those three paragraphs talk about the
22 duties that you believe Dr. Stewart had in this case.
23 A.    Yes.
24 Q.    Correct?
25 A.    Yes.

1  Q.   And for all three of those, you cite to
2  Dr. Stewart's contract as the source of those duties;
3  correct?
4  A.   Yes.
5  Q.   Okay.  From your review of all of the evidence and
6  deposition testimony in this case, did you find any
7  evidence that during the entire time Dr. Stewart worked
8  at the jail, Faulkner County ever considered him in
9  breach of his contract?
10 A.   Do I think that --
11 Q.   Did you review any of it in the evidence and
12 testimony you reviewed in this case where Faulkner
13 County ever indicated that Dr. Stewart was not
14 fulfilling his obligations under the contract?
15 A.   I never saw that indication.
16 Q.   All right.  Let's start with paragraph 6.
17 A.   6.
18 Q.   All right. You state that Dr. Stewart was the only
19 person who under state law was able to supervise and
20 direct Nurse Grant in her duties at the Faulkner County
21 Detention Center.
22      What is the basis for that statement?
23 A.   Well, looking -- having read his contract, and under
24 section 12, it says:  "The services herein required
25 shall be performed by doctor as an independent under his

1  correctional health.  And I've been to several of their
2  meetings where they provide protocols, they give you --
3  as medicine changes over time in detention facilities,
4  they provide protocols, directions for what needs to be
5  done, and basically an intensive educational program for
6  medical staff in a detention center of any kind.
7  Q.   Do you dispute Dr. Stewart's testimony when he said
8  he's provided information on the applicable laws and he
9  would review the protocols every few years?
10 A.   Do I dispute that?
11 Q.   Yeah.
12 A.   I have no idea whether he did it or not.  He
13 testified to that.
14 Q.   All right.  So No. 9, looks to me like that is
15 really where your opinions of where Dr. Stewart failed
16 in respect to some duty that you believe he owed; is
17 that correct?
18 A.   Correct.
19 Q.   All right.  And you've already told me on
20 paragraphs 6, 7, and 8 that you are finding these duties
21 in the contract between Dr. Stewart and the County;
22 correct?
23 A.   Correct.
24 Q.   And you have told me that in terms of wearing his
25 doctor hat, he did not provide any personal medical care

Case 4:21-cv-00444-BRW   Document 41-5   Filed 10/27/22   Page 7 of 8

49

```
 1  to Mr. Jones.
 2  A.   Not that I am aware of, he provided no personal
 3  care --
 4  Q.   All right.
 5  A.   -- but he was supervisor of setting the standard of
 6  an emergent situation.
 7  Q.   And so, any relationship that you believe
 8  Dr. Stewart had with Mr. Jones was either, as you
 9  described it, a result of his role as medical director
10  or due to some duty in his contract?
11  A.   Well, in his contract it says he agreed -- in his
12  contract that -- where is the backside of that deal?
13       Okay.  In his contract with the County and the jail:
14  "Services herein required shall be performed by the
15  doctor as an independent under the sole supervision,
16  management, direction, and control."
17  Q.   All right.
18  A.   "The county being interested only in the result
19  obtained."
20       That to me tells me that, doc, you're captain of the
21  ship; you run the medical boat; you make sure the
22  protocols are in place; that the right people and chain
23  of command are in place.
24       So, even if you don't get a -- if you can't get a
25  response from a jailer who is not medically trained, and
```

```
 1  regardless of whether he has any contact with them or
 2  any personal knowledge of --
 3  A.   I do.  They're under his purview.
 4  Q.   Okay.
 5  A.   They were under mine.  Just like in the emergency
 6  room, the ones sitting in the room are mine.
 7  Q.   If we take away his position as medical director
 8  under the contract, can we agree he has no
 9  physician-patient relationship, separate from his
10  position as medical director, with Mr. Jones?
11       MR. HALL:  Object to form.
12  A.   I can't answer that.  Say that again.
13  Q.   (BY MR. DARST)  If we take away your opinions about
14  him as the medical director of the jail, can we agree,
15  since he never personally saw Mr. Jones or knew of him
16  being in the jail, that he did not have a
17  physician-patient relationship with him?
18       MR. HALL:  Object to form.
19  A.   Okay.  If he was not the jail chief medical officer
20  and to Mr. Jones, I would have a hard time seeing that
21  he was -- that he was his patient.
22  Q.   (BY MR. DARST)  All right.
23  A.   But as a -- his responsibilities of being the chief
24  medical officer of the jail, he was.
25  Q.   All right.  And I know you're not an attorney.
```