# Exhibit A

S.M. Blanchard, M.D.

September 7, 2022

Preliminary Opinion Re: Sandra Jones vs. Faulkner County, Arkansas, et al.
United States District Court Eastern District of Arkansas Central District

Dear Mr. Thompson,

By way of introduction, my medical experience started in 1979 upon graduating from the University of Arkansas for Medical Sciences (UAMS) in Little Rock, Arkansas. I completed a three-year residency in Family Medicine in 1982. I was in fulltime practice in Jonesboro, Arkansas for more than 25 years. Concomitantly, in my days out of the clinic, nights, weekends, and holidays, I was employed as an Emergency Medicine Physician in several Emergency Rooms throughout the state of Arkansas. I attained board certification and subsequent recertification by the American Board of Family Medicine. I worked continuously on part-time basis in Emergency Rooms while engaged in fulltime Family Medicine. In early part of 2000's, I went to fulltime Emergency Medical Practice. My medical experience also includes work part-time as the Medical Director of both Craighead County and Green County Detention facilities. This included both oversight and direction of the jail medical staff as well as weekly "doctor clinic" at the facilities. A copy of my CV and rate is attached as Exhibits 1 and 2, respectfully.

I have reviewed the documents titled "List of Reviewed Documents" attached as Exhibit 3. I reviewed multiple medical resources regarding methamphetamine abuse and toxicity. A list of those articles and authorities are attached as Exhibit 4. I have reviewed the following depositions: Nurse Karen Grant, Dr. Garry Stewart, T. Sammich, B Homan-Santos, and Calene Scott.

Because of my experience set forth above and my medical training, I am familiar with the standard of care for emergency room physicians, family practice physicians and persons who serve as "Medical Directors" for detention facilities in the State of Arkansas.

Upon completing review; I conclude the following all of which within a reasonable degree of medical certainty:

1. Mr. Jones was clearly exhibiting signs and symptoms of acute medical distress when he was returned to the booking area after a lengthy delay in his processing: Excessive sweating (Daphoresis), altered mental status, confusion, tremors, excessive salivation, incoherent speech, loss of motor coordination and control, high blood pressure.

2. The deposition testimony clarifies the following facts: 1) officers without medical training witnessed his distress; and 2) several witnesses reported his distress to Nurse Grant on more than one occasion.

3. The standard of care required Nurse Grant to investigate the eye witness reports made by other jail personnel.

4. Karen Grant, LPN failed to respond in a timely manner. Her response is an indication of indifference to his distress until it was obviously too late to get Mr. Jones to the Emergency Department that was only a short distance away.

5. Nurse Grant violated the standard of care when she: 1) failed to timely respond to the reports of other jail personnel and investigate Jones' condition; 2) failed to notify Dr. Stewart of Jones' reported condition; 3) failed to have Jones promptly transported to the local emergency room.

6. According to Dr. Stewart's contract, the medical care of inmates was in his sole supervision, management, and control:

> 12. The services herein required shall be performed by doctor as an independent under his sole supervision, management, direction, and control, the county being interested only on the result obtained. It is expressly understood that doctor is no an employee of county and all amounts paid shall be considered professional services fees.

Dr. Stewart knew that the FCDC employed LPNs as a part of the "medical department." Thus, Dr. Stewart agreed to supervise, manage, direct, and control those LPNs in performing the contract. In fact, LPNs may only practice nursing under the "supervision" of licensed personnel such as a registered nurse or a licensed physician. Dr. Stewart was the only person who, under state law, was able to supervise and direct Nurse Grant in her duties at the FCDC.

7. Dr. Stewart's contract required him to perform the following duties in his sole supervision, management, direction, and control:

> 1. Doctor is to perform the following medical services, to be provided during a minimum of four hours and a maximum of eight hours on site at the jail:
>
> a. Serve as Medical Director for the Jail. Such duties include but are not limited to patient intake and screening, needs assessment, and referral to appropriate medical or psychiatric providers. Doctor will direct medical needs and services of the jail to assure compliance with jail regulations; and
>
> b. Conduct necessary tuberculosis screening and testing for inmates and Faulkner County Sheriff's Office personnel; and
>
> c. Review the Jail Medical Services Plan for inmate healthcare as requested by the Faulkner County Sheriff or designee: and

I find no evidence in the case of Jones, or any other inmate for that matter, that Dr. Stewart Jones completed his duties to intake or screen Jones or perform a needs assessment for him. Rather, he relied upon untrained medical personnel such as officers and a licensed practical nurse to complete these tasks. Allowing or directing LPNs to complete assessments of inmates is a violation of the Arkansas Nurse Practice Act. Even more appalling is that there were no medical protocols in place to guide these persons nor was there any training provided to them. Had Jones been properly screened and assessed, his clinical signs and symptoms would have manifested emergent care that would have saved his life.

8. Dr. Stewarts contract provided the following:

      7. Level of service:

      a. Doctor agrees to perform his duties in accordance with generally accepted   standards, and shall use that degree of care and skill commensurate with the medical profession to comply with all applicable federal, state, and local laws, regulations, rules, and ordinances now in force or that may hereinafter be enacted or promulgated.

By his own admission, Dr. Stewart was not familiar with the Arkansas Nurse Practices Act, the promulgations and regulations of the Arkansas State Nursing Board, the Criminal Detention Facility Standards or the policies and procedures of the FCDC all of which would fall under the parameters of paragraph 7 of the contract. Dr Stewart failed to provide medical protocols that were consistent with the above standards. Dr. Stewart knowingly chose to violate the Arkansas Practices Act by allowing LPNs to assess patients and do so in an unsupervised manner.

9. Dr. Stewart violated the standard of care in the following manners:
      a. failed to adopt and enforce protocols for medical staff for emergency care thus creating unreasonable barriers for detainees to receive emergent medical care. Nurse Grant was not qualified as an LPN to assess patients or otherwise make decisions regarding subtle clinical signs that are indications for emergency care;
      b. failed to adopt and enforce protocols for drug overdoses. Dr. Stewart admitted in his deposition that none of the current medical protocols in place were applicable to Jones. He further admitted there was no medical protocol in place to address drug overdoses;
      c. failed to supervise and train Nurse Grant on the signs and symptoms of a drug overdose;
      d. failed to investigate the medical policies and protocols that were being used by medical personnel in the jail regarding emergency care;
      e. failed to establish a protocol for Medical Watch but rather left this critical event to the discretion of untrained LPNs and other persons with little medical training;
      f. failed to review the Criminal Detention Facility Standards and incorporate those standards into medical protocols applicable at the jail;
      g. failed to review the Faulkner County Detention Center policies and procedures and assure that the medical protocols were consistent therewith;
      h. failed to advise the FCDC that licensed practical nurses must be supervised by a licensed physical pursuant to the Arkansas Nurse Practices Act;
      i. failed to supervise Nurse Grant pursuant to Arkansas Nurse Practices Act.
      j. knowingly allowed Nurse Grant to violate the Arkansas Nurse Practices Act;
      k. knowingly contracted with the FCDC to provide medical services to the FCDC, in his sole control and discretion, while violating the Arkansas Nurse Practices Act;
      l. Knowingly allowed or created unreasonable barriers to emergent care for detainees. A policy that only a licensed practical nurse could approve ER transfer is not only a violation of the Arkansas Nurse Practices Act but is, by common sense standards, appalling.

In my opinion, had Dr. Stewart complied with the standard of care, Jones would have received timely medical treatment that resulted in timely interventions that would have prevented his death.

I reserve the right to alter or amend my opinion and conclusions should additional information be provided to me.

S.M. Blanchard, M.D.