# Exhibit B

Mekka G. Spurlock, RN
34 Tawsee Dr.
Cherokee Village, AR 72529

9/12/22

Case of Sandra Jones, Administrator v. the Faulkner County Jail, and others
Eastern District of Arkansas, Central Division
Case No: 4:21-cv-444-BRW

I have reviewed the documents you provided regarding the incarceration and the events leading up to the death of Mr. Antonio Jones in September 2019.  I also reviewed the statements provided by correctional and medical staff in depth.

The documents included statements by the following personnel:

LeAnn Dixon, MA
Karen Grant, LPN
C.O. T. Samanich
C.O. Sgt. C. Scott
C.O. K. Brockman
C.O. A. Mason
Officer A. Head

Additional documents include:

The "medical book" for detention officers
The County Coroner's report
The State Crime Lab report with autopsy and Toxicology report
Conway Fire Department report
MEMS run report

For my part of the review of the circumstances surrounding the death of Mr. Jones I have reviewed the scope of practice for the LPN as described by the Arkansas State Board of Nursing and the job description for a Medical Assistant as described by the Medical Assistant Association.

According to the ASBN Decision Making Model the Practice of Practical Nursing is the delivery of care services performed under the direction of the professional nurse (RN), licensed physician, or licensed dentist, including observation, intervention and evaluation fall within the LPN/LPTN scope of practice. The delegation of certain nursing practices to other personnel under the direction of a registered professional nurse, an advanced practice nurse, a licensed physician, or a licensed dentist so long as acts do not require the substantial specialized skill, judgement and knowledge of professional nursing.

According to the
detention officers' statements, they have been tasked with the taking of vital signs when they detect a detainee or inmate is in medical distress before they can inform the nurse. Additionally, they are to do so once an inmate is placed on "medical watch" by the nurse.  However, when asked none of the detention officers felt that they had been sufficiently trained to perform these tasks and had to refer to the medical book for information as to what were normal vital signs.

Mr. Jones was placed on medical watch by Nurse Grant, LPN due to the concerns expressed by the detention officer and the medical assistant about his condition.  While on medical watch, Mr. Jones'

condition deteriorated and after multiple requests that she see him, she yet refused to evaluate him until he became unresponsive and CPR was initiated. It was noted by Sgt. Scott that Nurse Grant, LPN advised him that she believed that Mr. Jones had "taken something" and this was the reason for his behavior. Furthermore, Sgt Scott and another detention officer report that Nurse Grant stated she was not needed and she was not the on call nurse. There is no policy in place for overdose in the medical protocol book which should have prompted Nurse Grant to realize that caring for Mr. Jones was beyond her scope of practice and that he needed emergency medical care at an outside facility.  Also, it should be noted that the physician was no longer in the building that day to provide direction to care for Mr. Jones.

LeAnn Dixon, MA was also present early on and she offered her assistance to help obtain vital signs to the detention officer.  According to the Medical Assistant Association, a Medical Assistant (MA) is an employee of a physician who has been delegated practices or tasks and has not been licensed by or specifically authorized to perform the practice or task pursuant to other provisions of Arkansas law. According to her written statement, Ms. Dixon contacted Nurse Grant at least twice by phone to report on Mr. Jones condition. After she made her report to Nurse Grant, Ms. Dixon returned to her other duties.

It is my opinion that because Nurse Grant believed that Mr. Jones had taken "something" and that there was no protocol for treating drug overdoses that not only should she have gone to see Mr. Jones or had him brought to her, when his symptoms were first reported and worsening but that she should have contacted the physician for further orders or arranged with jail personnel for EMS to be called and Mr. Jones to be taken to the local Emergency Room for evaluation and treatment.

I reserve the right to modify this opinion, if necessary, should additional information be forthcoming.
Attached as exhibit A is my fee schedule. Attached as Exhibit B is my CV.
As this is my first professional testimony and I do not have a list of prior case involvement.

With Regards,
Mekka G. Spurlock, RN