IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SANDRA JONES, Personal Representative of
the Estate of Antonio L. Jones, Deceased                               PLAINTIFF

VS.                          NO.  4:21-cv-444-BRW

FAULKER COUNTY, ARKANSAS;
DR. GARRY STEWART, M.D., Individually,
KAREN GRANT, Individually,
and LEANNE DIXON, Individually                                     DEFENDANTS

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

The Plaintiff filed her Complaint in this case on May 21, 2021, alleging, under 42 U.S.C. 1983 and the Arkansas Civil Rights Act (ACRA), that her decedent's constitutional rights were violated when the Defendants - Dr. Garry Stewart, Karen Grant, Leann Dixon, and Faulkner County, Arkansas - allegedly failed to provide him with appropriate medical care, allegedly resulting in his death.  Doc. # 1.  **This motion is filed on behalf of all Defendants on all claims with the single exception of the malpractice claim against Dr. Garry Stewart, which will be addressed in a separate motion for summary judgment by the Dr. Stewart's malpractice counsel, RMP, LLP.**

For the reasons set forth herein, the Defendants are entitled to qualified immunity and summary judgment as a matter of law.

### II.  ARGUMENT

In her Complaint, Plaintiff Sandra Jones alleges that her decedent, Antonio Jones, was not provided appropriate medical care during his incarceration at the Faulkner County jail in August, 2019, allegedly resulting in his death. For the reasons set forth herein, however, the Defendants are entitled to qualified immunity and summary judgment as a matter of law.

### Summary Judgment Standard

"Summary judgment is appropriate when there is no dispute between the parties as to any

genuine issues of material fact and when the moving party is entitled to a judgment as a matter of law." *Get Away Club, Inc. v. Coleman*, 969 F.2d 664 (8th Cir. 1992). All facts and inferences are looked at in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## *Celotex* "Scintilla Rule"

In *Celotex v. Catrett,* 477 U.S. 317 (1986), the seminal case on interpreting the federal summary judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, *if any*,' which it believes demonstrate the absence of a genuine issue of material fact." The *Celotex* Court held ultimately that the movant need not submit supporting affidavits in order to prevail if he can show from the other material on file the absence of a genuine issue of material fact. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof by showing that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress,* 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." *See Celotex supra.*  It is the non-movant who must go beyond the pleadings and by affidavit, depositions or other *substantive* evidence designate specific facts showing that there is a genuine issue for trial. *Id.* (Emphasis added).

**Qualified Immunity Standard**

Public officials and employees are entitled to qualified immunity unless their alleged conduct violates "clearly established statutory or constitutional rights or which a reasonable person in their positions would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to allow public officials to perform their duties in a manner they believe to be correct without fear for their own financial well being. *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). "Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly established law." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

A court engaged in a qualified immunity inquiry uses a two step process. *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1103 (8th Cir. 2004). The first question is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show that the official's conduct violated a constitutional right. *Craighead v. Lee*, 399 f.3d 954, 961 (8th Cir. 2005)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the facts, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, the second question is whether the right was clearly established. *Id*. Those questions can now be considered by the Court in any order. *See Pearson v. Callahan*, 555U.S. 223 (2009). For the reasons set forth below, the Defendants are entitled to qualified immunity and summary judgment as a matter of law.

**A.** **No Individual Capacity Liability**

The Plaintiff's Complaint alleges that her decedent's constitutional rights were violated when he was allegedly denied medical care, which allegedly caused him to die on or about August 8, 2018

For the reasons discussed below, the Defendants are entitled to qualified immunity and summary judgment as a matter of law.

    **1.** **No Wrongful Death, Medical Negligence or Other Negligence Liability - Negligence Immunity & Inapplicability**

The Plaintiff did not clearly plead a wrongful death claim in this case, but even if she had, a wrongful death claim is a negligence claim and is, thus, barred by statutory immunity afforded by Ark. Code Ann. §21-9-301, as is her medical negligence claim against Defendant Grant and any vicarious liability claim(s) against Faulkner County (alternatively, the Plaintiff cannot establish any such tort claims with admissible evidence).

In the Plaintiff's Complaint, the term wrongful death appears *only* in the "Wherefore clause" of the Plaintiff's Complaint and the statutes giving rise to that cause of action, Ark. Code Ann.§16-62-101, *et seq.,* donot appear at all.  Doc. # 1.  Further, there are no allegations  - and certainly not sufficient allegations under *Twombly* and *Iqbal* [1] - to state a claim for wrongful death and any such claim must, therefore, be dismissed.  The Plaintiff likewise fails to state a claim for vicarious liability against Faulkner County (in fact, no such allegations are made at all). The Plaintiff does, however, assert a medical negligence claim against Defendant Karen Grant, the jail nurse.

With respect to the Plaintiff's claim against Karen Grant for medical negligence, and even if the Plaintiff had sufficiently pleaded a claim for wrongful death or vicarious liability (she has not), the Defendants would be still entitled to summary judgment as matter of law.  First, the Defendants are "immune... from suit for damages" in tort and from vicarious liaibility under Arkansas law. Ark. Code Ann.§ 21-9-301, entitled "Tort Liability - Immunity Declared" provides:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, … and all other political subdivisions of the state  … shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
>
> (b) No tort action shall lie against such political subdivision because of the acts of their agents and employees.

The immunity granted to a county *extends to the county's officials and employees.  Matthews*

---

[1] "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations and footnote omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949,  173 L. Ed. 2d 868 (2009).

*v. Martin*, 280 Ark. 245, 658 S.W.2d 374 (1983)(emphasis added). Defendant Grant and Dixon are employees of the County and the Defendants in this case do not have insurance nor does the County. *See* Ex. 1-4.

The County's membership in the Association of Arkansas Counties Risk Management Fund (AACRMF) also does not negate immunity, as the courts have uniformly and specifically found, on multiple occasions over decades, that "the AACRMF is not liability insurance" and that "coverage for negligent tort liability is expressly excluded" from AACRMF membership.[2] *See Hearnsberger v. Bradley County*, 2007 U.S. Dist.Ct. LEXIS 60383, 2007 WL 2350287, No. 06-2076 (W. D. Ark. 2007) (citing *Kauffman v. Board of Trustees of the Ass'n of Ark. Counties Risk Mgmt. Fund*, No. 87-2076 (W. D. Ark. 1988)). Additionally, as the Court held in the *Hearnsberger* case, "even if [the] County had negligence/tort liability insurance, the proper defendant to such a suit would be the alleged insurer." *Id.* (citing Ark. Code Ann. § 23-79-210).

Statutory tort immunity bars any tort claim(s) against the Defendants, including, but not limited to wrongful death claims. *Sledge v. City of Pine Bluff by and Through Washington*, No. CV-20-547, 2022 Ark. App. 23 (Jan. 19, 2022 Ark. Ct. App.) (finding municipality entitled to statutory immunity as to claim of gross negligence and reckless indifference in wrongful death action); *Cherry v. Tanda, Inc.*, 327 Ark. 600, 614-15, 940 S.W.2d 457, 463 (1997) (affirming immunity for city against wrongful death claim); *Cousins v. Dennis*, 298 Ark. 310, 312, 767 S.W.2d 296, 297 (1989) (finding Ark. Code Ann. § 21-9-301 immunity extends to employees of municipality). Clearly established law also bars a constitutional §1983[3] action based on allegations of negligence. *see, e.g.,*

---

[2] The Defendants have also asserted this fact by affidavit and the Plaintiff can offer no rebutting proof. *See* Ex. 1-4.

[3] The Plaintiff has asserted a constitutional claim(s) under the Arkansas Civil Rights Act (ACRA) in addition to 42 U.S.C. §1983, but the Arkansas Supreme Court has repeatedly held that the "analysis of claims brought pursuant to ACRA is guided by the same analysis in determining the merits of a civil rights action brought under federal law," *see, e.g., Muntaqim v. Payne*, 2021 Ark. 162, 6, 628 S.W.3d 629, 636 (2021) (citation omitted), so the analyses offered in this brief apply equally to constitutional claims brought under the sate and federal constitutions. To the extent that the Plaintiff argues this is not the case, the Defendant will address that argument on reply.

*Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) and/or on claims of vicarious liability tution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). The Eighth Circuit Court of Appeals specifically held, long ago, that an Estate pursuing an action under 42 U.S.C. §1983 may recover damages *only* for constitutional injury to the decedent, not the heirs and/or the Estate. *Andrews v. Neer*, 253 F.3d 1052, 1064 (8h Cir. 2001) (administratrix "cannot shoehorn recovery" for alleged damages to heirs or Estate into section 1983 action). In light of these cases, and the clearly established law that they enunciate, the Defendants are also entitled to qualified immunity, and summary judgment, with respect to the Plaintiff's medical negligence against Defendant Grant and any claim(s) for wrongful death and/or vicarious liability.

### 2. No 42 U.S.C. §1983/ACRA Liability - Qualified Immunity

The Plaintiff's primary claim, pleaded under 42 U.S.C. 1983, is that her decedent was denied appropriate medical care during his incarceration at the Faulkner County jail on August 8, 2019, which allegedly caused him to commit suicide. Doc. # 79. For the reasons discussed herein, however, the Plaintiff cannot prove deliberate indifference by any of the Defendants and certainly cannot establish the violation of clearly established law. As such, the Defendants are entitled to qualified immunity and summary judgment as a matter of law.

With respect to a claim of deficient medical care in a jail[4], the Supreme Court has held that officials violate a prisoner's right to medical care only if their conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 108, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference" on the part of prison officials requires a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference has both an objective and subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir.2006). "The objective component requires a plaintiff

---

[4] To the extent that the Plaintiff might try to pursue a failure-to-protect theory at this late date, despite not pleading it in her Complaints, it would not change the analysis as failure to protect claims are also analyzed under the deliberate indifference standard.

to demonstrate an objectively serious medical need." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir.2009) (citing *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir.2006)). "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id*.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.s. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. *2000)(quoting Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly,* 205 F.3d at 1096 *(quoting Estate ofRosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995)); *Spann v. Roper*, 453 F.3d 1007, 1009 (8th Cir. Mo. 2006) (citing *Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (mere disagreement with treatment decisions does not rise to level of constitutional violation).

In this case, the Plaintiff has sued 3 individual Defendants.  With respect to each of these Defendants, the Plaintiff must prove that he/she actually knew that the Plaintiff's decedent suffered from a serious medical need and, in the face of that knowledge, "disregarded" or ignored the need. The Plaintiff cannot offer such proof with respect to any of the Defendants, however, and they are, thus, entitled to qualified immunity and summary judgment as a matter of law.

### *a.*     *Dr. Garry Stewart*

The Plaintiff has not sued Dr. Stewart for any constitutional wrongs, nor could he.  Doc. # 1, ¶¶46-73 (asserting constitutional claims only against Faulkner County, Grant, and Dixon). Instead, he has sued Dr. Stewart only for medical negligence/malpractice. Dr. Stewart's separate counsel have filed a separate summary judgment motion on that claim and the same is adopted an

incorporated herein by reference.

### b.     *Leanne Dixon*

Defendant Leanne Dixon is entitled to qualified immunity and summary judgment as a matter of law with respect to the Plaintiff's constitutional claims because the Plaintiff cannot establish that she engaged in deliberated indifference.

The Plaintiff's claims against Dixon a CNA medical assistant, arise form a single encounter with the Plaintiff. Specifically, on August 8, 2019, at around 3:15 p.m., Dixon was taking some paperwork from the jail medical clinic to the booking area of the jail as a normal part of her duties when she noticed a detainee, who was identified to me as Antonio Jones, sitting on the bench. To her knowledge, she had never met or encountered Mr. Jones before that moment. When she noticed Jones sitting on the bench (he was sitting up and was not hunched over), she asked Officer Thomas Samanich what was going on and he told her that he was not sure, but was about to take the detainee's vital signs. Dixon did not think that detainees Jones's condition was required immediate transport to the emergency or similar emergency care at that point. Ex. 3, Dixon Affidavit.

While Officer Samanich was taking detainee Jones's vital signs, Dixon called the jail nurse, Karen Grant, from her cell phone (at 3:19 p.m.) and told her that the detainee was shaking (Dixon observed this in his arms) and sweating and that his eyes were really red. Dixon also told Grant that Office Samanich was taking his vital signs. Nurse Grant told Dixonto make sure that his blood sugar was taken and to call her back when we had vitals. After that call, Dixon assisted Officer Samanich with obtaining vital signs. They also asked Mr. Jones - who was fully coherent and responding to our questions appropriately at that time - whether he had done or ingested any drugs and he told us no, that he had not; Dixon believed him. Because detainee Jones was shaking and because the jail uses use an automatic cuff that tolerates very little movement, they could not get a blood pressure reading at that time. They did get a blood glucose reading, which was 84, a normal reading. Dixon then called Nurse Grant back (at 3:23 p.m.) and conveyed Jones's blood sugar reading. She also told Grant that they had been unable to get a blood pressure reading. At that time, Nurse Grant told

Dixon to begin a medical watch on detainee Jones, with vital signs to be taken hourly and relayed to nurse Grant. Dixon conveyed Nurse Grant's instructions to Officer Samanich and he began the medical watch. Ex. 3, Dixon Affidavit.

Dixon left the area at that time and went back to the medical clinic, where she repeated, in person, what she had told Nurse Grant on the phone. Dixon left the facility only a short time later when her shift ended. She received no further information about Mr. Jones or his situation until much later, when she was informed that he had passed away. She was shocked when she heard the news. Ex. 3, Dixon Affidavit.

The above-stated facts do not begin to establish deliberate indifference. To the contrary, the case law expressly protects jail staff who report medical conditions to medical staff and holds that they are entitled to rely on the opinions and actions of the medical staff. *See, e.g., Heidemann v. Rother*, 84 F.3d 1021, 1029 (8th Cir.1996). This protection must be doubly strong in this case, where the decedent expressly lied, more than once, about the actual and self-inflicted source of his medical issues. No case has ever imposed deliberate indifference under these facts and Defendant Dixon is, thus, entitled to qualified immunity and summary judgment as a matter of law.

   *c.*  *Karen Grant*

Defendant Grant is also entitled to qualified immunity and summary judgment as a matter of law with respect to the Plaintiff's constitutional claims because the Plaintiff cannot establish that she engaged in deliberated indifference.

The Plaintiff's claims against Grant, an LPN at the Faulkner County jail, arise from a period of approximately 90 minutes on August 8, 2019. About 3:20-3:30 p.m. on that date, nurse Grant was called by Leanne Dixon, a CNA medical assistant at the jail. Dixon called her from booking (I was in the facility medical clinic in another part of the building) to report that a detainee, Antonio Jones, was shaking and sweating. Dixon also told Grant that detainee Jones was fully coherent and answering questions appropriately. Neither Dixon nor anyone else ever told Grant that they thought he had taken anything, including drugs, which they always do if they have such a suspicion (she later

learned that was because they had, on more than one occasion, asked him whether he had taken anything and denied taking any drugs or being under the influence of any drugs or alcohol). While it was August (many of the detainees were sweating), Grant was concerned about a possible diabetic issue, so she instructed Dixon to take a blood sugar reading from the detainee. Dixon called Grant back a few minutes later and reported that his blood sugar reading was 85, which is completely normal (she also mentioned that they had been unable to get a blood pressure as his arm was shaking, but that is not particularly abnormal, as they utilize an automatic blood pressure cuff that doesn't tolerate much movement). As such, Grant instructed Dixon to place the detainee on medical watch - which means placing him on the booking bench, in full view of numerous officers, to be checked on every 15 minutes and to have his vital signs (blood pressure, pulse, respiration, pulse ox, temperature) taken on an hourly schedule - and to report back any changes in condition or abnormal readings. The officers have "automatic" instruments for taking these readings, where necessary (respiration, for instance, is just counting breaths), with instructions on the instruments themselves (e.g., the blood pressure cuff) or the case in which it was held (e.g., tympanic thermometer) and "normal range" charts were also available. Ex. 2, Grant Affidavit.

After ordering that detainee Jones be placed on medical watch, with any changes in condition or abnormal readings to be reported back to her, Grant went back to other work until a short time later when Ms. Dixon returned to the clinic. She repeated what she had told Grant on the phone and also confirmed that Jones had, in fact, been placed on medical watch and was being checked on every fifteen minutes and that the officers had expressed understanding that they were to take his vital signs on an hourly schedule and report any problems. After speaking with Dixon in person only a short time after their initial phone call about detainee Jones's presentation and Grant's decision to place him on medical watch, I heard nothing further until the officers called me with new vital sign readings; this occurred sometime around 4:30-4:45 p.m. They reported that Mr. Jones blood pressure was 103/85 and that his pulse oximetry (blood oxygen saturation level) was in the 90s, both of which were patently normal, if not excellent, readings (the fact that they took a successful BP was

10

also noteworthy to me, as it indicated that his shaking might have dissipated since the initial report). I asked what else was going on and they told me that he was still sweating and shaking (which indicated to me that his overall condition was essentially unchanged), but mentioned nothing else. Ex. 2, Grant Affidavit.

After the call regarding Jones's second/normal vital sign readings, Grant received no further information until shortly (i.e., a minute or two, I recorded the time as 4:59 p.m.) before 5 p.m. when Officer Calene Scott called her and told her that detainee Jones's nose was bleeding. Grant asked Scott whether it was "trickling" or "gushing" blood (minor bloody noses occur frequently in the jail for a variety of reasons). Scott said that the detainee was grunting and was throwing up and bleeding out of his nose and they asked me to come to booking. Grant told them to get him over a trashcan (I understood him to be conscious and vomiting at that point) and told them that she was not the nurse on call, but that she was coming down to booking immediately. Ex. 2, Grant Affidavit.

When Officer Scott asked Grant to come to booking, she immediately headed that way and arrived in 2-3 minutes (she recorded the time as 5:03). Upon arrival, she saw Officer Homan attempting to rouse detainee Jones with an ammonia capsule and she immediately instructed the officer at the desk to call 911. Grant also immediately began examining Jones and noted that the detainee's pupils were fixed and dilated and that he had blood coming out of his left nostril and the right side of his mouth. His skin was cool and clammy to the touch (which made sense in light of the report of sweating; I would note that his clothing was not wet or even damp) and he had no pulse, at least that Grant could feel. Grant asked the officers to place him on the floor and begin CPR and they immediately followed her instructions. I then instructed them to get the AED, but it advised "no shock" so they were unable to use it at that time. Jones was also quickly given Narcan, with no effect. CPR was continued until the fire department and EMS arrived and they continued care until the detainee was taken away from the jail. Ex. 2, Grant Affidavit.

The above recitation of nurse Karen Grant's knowledge about the Plaintiff's actual knowledge about the Plaintiff's condition and her actions in response is simply not a record of

deliberate indifference and certainly does not violate that standard as a matter of clearly established law. Quite to the contrary, the Eighth Circuit has held that monitoring a detainee by way of a medical watch, with a corresponding log, is not constitutionally infirm. *Fourte v. Faulkner County*, 746 F.3d 384 (8th Cir. 2014). Additionally, nurse Grant's knowledge in this case is that Jones had been sweating and shaking for a very short period of time (particularly in the early moments of the 90-minute period at issue),but all of the vital sign readings actually conveyed to her indicated that nothing was amiss. When that changed, at 4:59 p.m., she responded and was examining Mr. Jones by 5:03. In the 90 minutes preceding that period, no one that had been in Mr. Jones presence ever told nurse Grant mentioned that they thought detainee Jones needed to be taken to the emergency room or otherwise provided emergency medical care. In fact, none of them even asked nurse Grant to come see Mr. Jones in person before the call at 4:59. While any death is unfortunate, the Plaintiff cannot show that her decedent's death was caused by nurse Grant's deliberated indifference and certainly cannot point to any cases that would have put her on reasonable notice of the illegality of her actions in the particularized context of this case. As such, nurse Grant is entitled to qualifie d immunity and summary judgment as a matter of law.

**B.     No Official Capacity/County Liability**

In her Complaint, the Plaintiff sues three individuals and Faulkner County. As noted above, Faulkner County is entitled to immunity from any claims in tort. Additionally, the Defendants are entitled to qualified immunity and

A governmental entity, here Faulkner County, may be held liable for the unconstitutional acts of its officials and/or employees only when those acts implement or execute an unconstitutional county policy or custom. *See Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). The county would be liable for the Defendants' conduct only if the subject officer were (1) a County employee or official and (2) if the officer was implementing or executing an unconstitutional county policy or custom that (3) directly caused plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397(1997). In the absence of a written policy, plaintiff must identify a pattern of

deliberate indifference and certainly does not violate that standard as a matter of clearly established law. Quite to the contrary, the Eighth Circuit has held that monitoring a detainee by way of a medical watch, with a corresponding log, is not constitutionally infirm. *Fourte v. Faulkner County*, 746 F.3d 384 (8th Cir. 2014). Additionally, nurse Grant's knowledge in this case is that Jones had been sweating and shaking for a very short period of time (particularly in the early moments of the 90-minute period at issue),but all of the vital sign readings actually conveyed to her indicated that nothing was amiss. When that changed, at 4:59 p.m., she responded and was examining Mr. Jones by 5:03. In the 90 minutes preceding that period, no one that had been in Mr. Jones presence ever told nurse Grant mentioned that they thought detainee Jones needed to be taken to the emergency room or otherwise provided emergency medical care. In fact, none of them even asked nurse Grant to come see Mr. Jones in person before the call at 4:59. While any death is unfortunate, the Plaintiff cannot show that her decedent's death was caused by nurse Grant's deliberated indifference and certainly cannot point to any cases that would have put her on reasonable notice of the illegality of her actions in the particularized context of this case. As such, nurse Grant is entitled to qualifie d immunity and summary judgment as a matter of law.

**B.     No Official Capacity/County Liability**

In her Complaint, the Plaintiff sues three individuals and Faulkner County. As noted above, Faulkner County is entitled to immunity from any claims in tort. Additionally, the Defendants are entitled to qualified immunity and

A governmental entity, here Faulkner County, may be held liable for the unconstitutional acts of its officials and/or employees only when those acts implement or execute an unconstitutional county policy or custom. *See Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). The county would be liable for the Defendants' conduct only if the subject officer were (1) a County employee or official and (2) if the officer was implementing or executing an unconstitutional county policy or custom that (3) directly caused plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397(1997). In the absence of a written policy, plaintiff must identify a pattern of

widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff must show that the County "through its deliberate conduct . . . was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 526.

Plaintiff has no proof of any unconstitutional county policy or custom, no proof of any underlying violation of her deceent's rights (*see supra*),and certainly no proof to show that an unconstitutional county policy or custom was the "moving force" behind an underlying violation of his rights. To the contrary, the proof establishes that Faulkner County had constitutionally appropriate policies in place to govern the provision of medical care in the jail. *See* Ex. 13, Huffman Affidavit & attached policies. Accordingly, the Defendants are entitled to summary judgment as a matter of law with respect to Plaintiff's official capacity/county claims.

To the extent that the Plaintiff attempts to make a training or supervision claim(s) against Faulkner County, such claims likewise fail as a matter of law. First, training and supervision claims are not properly made against an entity (a County is an inanimate entity and cannot actually train or supervise anyone, or actually do anything else, for that matter); rather, such claims are properly brought only against individual supervisors (the Plaintiff has not sued any jail supervisors). The Eighth Circuit has repeatedly held that government officials are personally liable only for their own misconduct. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir.2010), citing *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir.1997). Thus, "[t]he doctrine of qualified immunity requires an individualized analysis of each officer's alleged conduct." Walton, 752 F.3d at 1125 (quotation omitted). When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.[5] *Livers*

---

[5] This enunciation of the standard reveals its inapplicability to entity claims. The County is inanimate and, thus, can only act through policies or customs, but the standard contains no policy or custom prong. Even if it did, the Plaintiff in this case cannot establish an

*v. Schenck*, 700 F.3d 340, 355 (8th Cir.2012). In this case, the Plaintiff has not sued any of the jail supervisors (she tried to amend to add the Sheriff and the former jail administer, but those attempts were stricken). Even if she had, though, there is no evidence of deliberate indifference to any known training or supervision need prior to the events in this case. As such, any training and/or supervision claims, no matter how couched, must fail, as the County is entitled to summary judgment as a matter of law.

### III. CONCLUSION

For the reasons set forth herein, the Faulkner County Defendants are entitled to qualified immunity and summary judgment as a matter of law.

Respectfully submitted,

Faulkner County, Arkansas, Dr. Garry Stewart, M.D., Karen Grant, and Leanne Dixon, *Defendants*

JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1023 Main Street, Suite 204
Conway, Arkansas 72032
Telephone: (501) 764-4334
Telefax: (501) 764-9173
email: owens@jowenslawfirm.com

By: /s/ Jason E. Owens
Jason E. Owens, #2003003

---

unconstitutional county policy or custom as to training or supervision. See Ex. 1 Huffman Affidavit.

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the Arkansas Circuit Courts' Electronic Filing System, which provides electronic notice of filing to all counsel of record.

    /s/   Jason E. Owens
Jason E. Owens