IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SANDRA JONES, Personal Representative of**          **PLAINTIFF**
the Estate of ANTONIO L. JONES, Deceased

VS.          Case No: 4:21-cv-444-BRW

**FAULKNER COUNTY, ARKANSAS**          **DFENDANTS**
**Dr. GARRY STEWART, M.D., Individually,**
**KAREN GRANT, Individually,**
**and LEANNE DIXON, Individually**

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S WITNESSES

Defendants' motion (Doc. 46) contains so many errors, Plaintiff has a difficult task to decide where to begin. First off, it should be noted that Plaintiff's Complaint was never amended. Defendants objected (Doc.16) and the court granted their Motion to Strike (Doc.20). Secondly, Plaintiff never alleged "unreasonable seizures under the Fourth Amendment to the U.S. Constitution. Furthermore, as the Complaint was never amended, the Estate of Monte Munyan was never joined as a defendant. To the extent that Plaintiff's claim alleges "unlawful terms and condition of confinement", Plaintiff alleges certain jail employees were aware of and chose not to attend to his serious medical needs. He also contends that Faulkner County had policies, procedures, routines and practices that cause the deprivation of his rights under the Fourteenth Amendment. It

1

appears that Defendants' motion is boilerplate and not specifically tailored to the Plaintiff's complaint.

Next Defendants attempt to characterize Plaintiff's understanding of what transpired. Instead, they mischaracterize her position. The best evidence of the Plaintiff's position are the facts developed in discovery, particularly through deposition. Most notably, Defendants fail to mention that the detention officer who resumed the book-in process at 3pm, Officer Samanich, noted that Mr. Jones had an unsteady gait, had difficulty keeping his balance, had to lean against the wall, was sweating profusely, was shaking vigorously and so badly that he (Samanich) had to hold Jones' hand steady and attempt it several times to make sure the prints were correct, and Jones had a very difficult time kind of comprehending what Samanich was asking him. Jones spoke in a very low, monotone voice. Furthermore, Defendants fail to mention what Leanne Dixon felt what she saw of Mr. Jones was not normal and unusual and felt she needed to informed Nurse Grant. Dixon testified she felt she should call Grant because of what she saw so Grant could attend to Jones and because she thought he needed medical attention; that she told Grant that Jones was shaking, sweating, eyes were really, really red, and Samanich was attempting to take his vitals. Dixon continued that after Grant told her to get Jones' vitals, she reported back to Grant, gave her the blood sugar result and informed Grant that they were not able to get Jones' blood pressure. At

...

that point Grant ordered a 4 hour med watch on the bench with vitals taken every hour; that she relayed that information to ofc Samanich, finished her duties and returned to the clinic where Grant was located. Dixon stated further that upon her return to the clinic she repeated to Grant what she'd seen but neither she nor Grant did anything further to see that he received the medical attention that she thought he needed.

DISCUSSION:

**Dr. S. M. Blanchard, MD**

Distilled to its essence, Defendants contend that Dr. Blanchard's testimony will not aid the court or the trial of fact in resolving any of the issues in the case. Separate defendant, Dr. Garry Stewart, MD, has been sued in two capacities, both individually for medical malpractice and as an agent for the County. As this court is well aware medical negligence or medical malpractice typically requires expert testimony. That alone necessitates Dr. Blanchard's testimony.

MEDICAL MALPRACTICE:

Medical malpractice is a state law claim, the elements of which are set by Arkansas law. An illustrative case is *Harmon v. Bland*, 2020 Ark. 128, 596 S.W.3d 14 (Ark. 2020). Harmon, an inmate at the Varner Supermax Unit of the Arkansas Department of Corrections (ADC), brought claims under article 2, sections 4, 6, and 13 of the Arkansas Constitution, the Arkansas Civil Rights Act, codified under

Ark. Code Ann. §§ 16-123-101 to -108 (Repl. 2016). He that alleged that two nurse demonstrated deliberate indifference to his serious medical needs in violation of article 2, section 9 of the Arkansas Constitution. He also sued the Health Services Administrator for medical malpractice and negligence. In discussing the trial court's error in dismissing his claim, the Court discussed the statutory burden of proof in a medical malpractice case. The court stated:

> The circuit court improperly relied upon the statutory burden of proof for medical malpractice claims when determining that Harmon's complaint failed to state a colorable cause of action. See Ark. Code Ann. § 16-114-206 (Repl. 2016). The statute provides that in an action for medical injury, unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, the plaintiff has the burden of proving three propositions **by expert testimony**: (1) the applicable standard of care; (2) the defendant's failure to act in accordance with that standard; and (3) that the failure was the proximate cause of the plaintiff's injuries. Id. [emphasis added]

596 S.W.3d 16

The law as articulated above alone requires Dr. Blanchard's presence. Dr. Stewart's defense is that he had no physician-patient relationship with Antonio Jones and thus owed no duty to him. Stewart's duty to Antonio is both statutory and contractual. This is not a matter that would be understood by a jury as a matter of common knowledge.

Statutory:

> Act 153 of 2017, codified at A.C.A. § 12-26-103 et seq, is the Act

establishing the Arkansas Criminal Detention Facilities Review Committee (ACDFRC) and its authority. The Act empowers the ACDFRC to establish standards for Detention Facilities (jails) in Arkansas. Page 1 of the standards defines Health Authority:

> "*Health Authority means a licensed physician, health administrator or agency. When this authority is other than a licensed physician, final medical judgment rests with a single responsible physician who is licensed in Arkansas and who has been so designated by the Chief Executive.*"

The Standards provide in Chapter IX, Medical, Dental, and Mental Health Care Services Section 9-1001, WRITTEN PLAN REQUIRED: "The Chief Executive shall establish a written plan for making all medical, dental and mental health services available for inmates. <u>The Plan shall include the designation of a health authority</u>." [emphasis added]. Dr. Stewart testified previously in *Turner v. Stewart, et al*, 4:18-CV-468-DPM, a medical malpractice lawsuit against him for his treatment of a Faulkner County detainee. Therein he acknowledged that the was the Detention Center's health Authority. [Exh A, pg. 22, ln 21 -pg. 23, ln 1- 20] and that it was his job to make sure that inmates have access to care. [Exh A, pg. 26, ln 9-15]. He further testified that if an inmate needed medical care, he was responsible for coming up with the treatment plan. [Exh A, pg. 27, ln 21- pg 28, ln 5].

Arkansas law, A.C.A. § 12-41-502, authorizes Sheriffs to hire medical

directors to deliver of proper, adequate, and timely health care services to detainees in custody at their jails. Stewart thus had the duty to deliver of proper, adequate, and timely health care services to detainees in custody at the jail.

Furthermore, Section 021, DETAINEE HEALTH CARE of the Faulkner County Detention Center Policy and Procedures Manual, January 1, 2017, acknowledged this duty as it's policy:

> **POLICY:** It is the policy of this detention facility to insure the healthcare services within the detention facility are adequate for the facility and managed in accordance with accepted health care policies and procedures. The detention facilty physician is the only physician that has medical authority in the detention center.

Dr. Blanchard's report is essential to aid the court and jury to understand that the source of the duty and that it arose statutorily and by County policy; that the duty can be formed in ways other than where the physician has treated the person. Dr. Blanchard's testimony will aid the jury in understanding this issue among others. Stewart's duty to Antonio is both statutory, County policy, and contractual. This is not a matter that would be understood by a jury as a matter of common knowledge and Dr. Blanchard's testimony will aid the jury in that respect.

CONTRACTUAL:

MEDICAL MALPRACTICE

A.C.A. § 12-41-502 authorized Ryals to hire Stewart as medical director for

the Detention Center to deliver of proper, adequate, and timely health care services to detainees in the county's custody at the jail. Pursuant to that authority, Ryals and the County Judge entered a contract with Stewart as the Detention Center's medical director and Stewart had the duty to deliver of proper, adequate, and timely health care services to detainees in custody at the jail. His failure to do so was below the standard of care.

Dr. Stewart acknowledged it was his duty under the contract as the medical provider, to oversee the health care of the inmates. He stated that this entailed the responsibility to see that there were protocols in place for various different scenarios that would occur, [Exh B, pg. 30, ln 21 – pg. 31, ln 5]; and that he had sole responsibility for the supervision, management, direction, and control of medical services at the jail. [Exh B, pg. 76, ln 15 – pg 81, ln 12].

Dr. Stewart testified inmate care was, for the most part, protocol driven, and that he had approved and ratified the existing protocols when he was hired in 2005; and that he reviewed them for the need for updates very two or three years. [Exhibit B, pg 72, ln 21 – 25; pg 74, ln 2- pg 75, ln 1; pg 85, ln 17- pg 86, ln 18; & Exhibit A, pg. 29, ln 20 -pg. 30, ln 14. These medical protocols, entitled "Treatment Protocols, (Medical Staff Only)", were policies for the FCDC medical personnel to follow and not the detention officers. [Exh A, pg. 29, ln 20 - pg. 30, ln 14; Exh B, pg 83, ln 17- pg 86, ln 18, Exhibit B, pg 99, ln 1 - 20]. Nurse Karen

Grant referred to the protocols for medical staff only as the "white binder". [Exh C, pg. 28, ln7- pg 31, ln 10]

Furthermore, Dr. Stewart was well aware of the need for Treatment Protocols for the medical staff to deal with drug problems in the jail. He testified that there was a continuous flow of patients with methamphetamine drug problem through the jail; and that for the last four years of his term as medical director, the flow had remained steady. [Exh B, pg 14, ln 18 – pg 15, ln 14]. In fact, Nurse Grant estimated that 35 – 40 percent of the detainees arriving at the jail were under the influence of illegal drugs, and perhaps 30 percent of the arrestees were under the influence of methamphetamine. [Exh C, pg 32, ln 15 - pg 33, ln 4]. Dr. Stewart also been trained in his residency and attended CMEs over the years where methamphetamine issues were a topic. [Exh B, pg 16, ln 22 – pg. 19, ln 7].

Despite the fact that it was Dr. Stewart was "responsibility to see that there were protocols in place for various different scenarios that would occur", he chose not to provide treatment protocols for the medical staff when faced with apparent drug overdoses. Dr. Stewart's decision not to include directives for the medical staff in the "Treatment Protocols for drug overdoses posed unnecessary risk to the detainees with whom the jailors and medical staff with whom they would come into contact. Dr. Blanchard's testimony will aid the court and jury in that regard. Not only does the foregoing spell out the duty Stewart's duty to detainees such as

Antonio Jones, it also spells out his failure to meet the standard of care. Dr. Blanchard's testimony is essential to aid the court and jury to understand that the source of Dr. Stewart's the duty and his failure to meet it is below the standard of care.

Next, Defendants contend that Dr. Blanchard cannot opine about a LPN's duties and standard of care and that his report should be excluded therefore. The defendants are in error. After discussing the requirement for expert witness testimony in medical malpractice actions, the court in *Dodd v. Sparks Regional Medical Center*, 204 S.W.3d 579, 90 Ark.App. 191 (Ark. App. 2005), held: "It is not critical whether the proposed expert is a general practitioner or a specialist so long as he exhibits knowledge of the subject. *Cathey v. Williams*, 290 Ark. 189, 718 S.W.2d 98 (1986). Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation, or association within that specialty, his opinion is competent. Id. See also *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). Dr. Blanchard is duly qualified to render his opinion regarding Nurse Grant's failure to meet nursing standards of care.

**Dr. Stewart as an agent of the County:**

Dr. Stewart does not allege that as medical director, he was not the facility

health authority or the detention facilty physician. Nor does he question that for medical issues, he had sole "responsibility for the supervision, management, direction, and control of those [medical]services" and his decisions in that capacity were policy decisions on behalf of the County. Furthermore, Dr. Stewart was aware that methamphetamine abuse was a frequent incident with detainees in the jail. He stated there was a continuous flow of [patients] through the jail with methamphetamine drug problems; lots of [patients] that were incarcerated that have problems with methamphetamine, and they come and they go and they go.

As set out above, it was Dr. Stewart's duty to develop appropriate medical treatment protocols for the medical staff to address the risk of meth drug overdoses. He was responsible "to see that there were protocols in place for various different scenarios that would occur". [Exh B, pg. 30, ln 21 – pg. 31, ln 5]. However, Dr. Stewart chose not to provide treatment protocols for the medical staff when faced with apparent drug overdoses.  [Exh B, pg 20, ln 13 – pg 24, ln 3; pg 85, ln 18, & pg 98, ln 6 – 115, ln 9].

Dr. Blanchard's testimony will aid the court and the jury to put Dr. Stewart's decision in context. His decision not to include directives for the medical staff in the Treatment Protocols for drug overdoses posed unnecessary risk to the detainees with whom the jailors and medical staff with whom they would come into contact and was deliberate indifference. Dr. Blanchard's testimony will aid the jury in

understanding the complicated issues with respect for the need for medical treatment protocols in a jail setting and Dr. Stewart's awareness of the need for drug, particularly methamphetamine, overdoses, and how that failure to give guidance to the medical staff affected the disastrous outcome.

While deliberate indifference is a legal issue, Dr. Blanchard can address the underlying facts and circumstances which will aid the court and the jury in deliberating that issue.

MEKKA SPURLOCK

Ms. Spurlock is a nurse RN with extensive experience serving as a correctional nurse. Not only by training, but her experience qualifies her to opine as an expert. The defendants do not dispute this. They only argue that her testimony will only confuse the jury. Perhaps the same argument could be made as to the defendant's expert, Dr. Grady Bazzel, MD. However, a disagreement between experts is not the basis for excluding an expert witness. Her testimony goes directly to the nursing standard of care and can aid the court and the jury in assessing whether Nurse Grant failed to meet it. Furthermore, as Nurse Grant is also sued in her individual capacity as an agent of Faulkner County Detention Center, her testimony will aid the court and the jury by providing the underlying evidence from which they can assess whether Nurse Grant was deliberately indifferent. Nurse Spurlock can aid by laying out what was expected of Nurse

Grant and what she actually did. From there, the court and jury can assess if this evidences deliberate indifference.

Phil Stanley

Defendants raise a number of spurious arguments which the plaintiff will address. Mr. Stanley is not offered to, nor gives, medical opinions. He opinion touches on the level of training the detention officers received. He is eminently qualified to give expert opinion about jail best practices. Defendants have not submitted any case where Mr. Stanley was limited or not permitted to render testimony in aid of the court or jury in that regard. However, the cases the defendants do cite do not make the point they allege. For instance, *Ashley v. McKinney*, Case No. 4:19-cv-003090-MTS, 2021 WL 1198066, (E.D. Mo. March 29, 2021), is not about a corrections expert offering medical opinions. The question before the Ashley court was whether the inmate was entitled to have the court appoint him an expert under FRCP 706. In footnote 5, the court observed that it was not clear that the neuropsychologist and orthopedist would have any expertise with respect to his complaint that the defendant were deliberately indifferent to his toothache and chest pain.

The next case the defendants cite is inapposite. *CitiMortgage, Inc. v. Mason Dixon Funding, Inc.,* Case No. 4:09cv1997TCM, 2012 WL 13055580, (E.D. Mo. Oct. 30, 2012) is a complex commercial contracts litigation between two lending

giants. Plaintiff, CitiMortgage, Inc. (CMI), purchased loans from defendant, Mason Dixon Funding, Inc. (Mason), and now wanted Mason to buy back twenty of the loans. Mason declined to do so and CMI alleged that Mason has, therefore, breached its contract. The Court excluded Mason's expert for two reasons. It felt that it was improper legal conclusions and was not based on facts specific to the case. The expert had failed to consider several critical relevant files and documents and utilized general information regarding the industry (the buying and selling closed loans) and not specific to the parties practices. It appears the court felt, without more, the conclusion was not reliable. That is not the case here. Mr. Stanley provided an extensive list of the documents he reviewed, all of which were relevant and specific to the parties and the issues involved.

**Professor Andy Terry, PhD**

Plaintiff agrees that her submission of Economist Andy Terry's expert report was tardy by a few days but denies that Defendants were prejudiced thereby. On Sept 13th, plaintiff informed the defendants of Professor Terry and provided his CV. On Sept 19th Plaintiff provided the report. In turn, the defendants submitted their rebuttal report on Oct. 19, 2022, without objection from the Plaintiff. Trial is set for January 10, 2023, although it is not likely to go. Given that the defendants have retained its own expert who has prepared a report in rebuttal, they are prepared and have not been prejudiced.

13

A practical consideration is that prejudice typically relates to the adverse effect delay has on the other party's ability to prepare for trial. Without exception in these cases, the defendants file motions for summary judgment based on qualified immunity, as is the case here. Oftentimes, the trial court will deliberate for quite some time which removes the case from the trial docket. However, even where the ruling is swift, regardless of how the court rules, either party will appeal which also removes the case from the trial docket. Plaintiff anticipates this will be the case here. Clearly the Defendants have not been prejudiced in their ability to prepare for trial.

However, with Professor Terry's report, the defendants do not challenge Professor Terry's methodology. Rather their critiques are more an argument for the jury as to the weight to be given it rather than one for exclusion.

Respectfully submitted for Sandra Jones,
Special Administrator of the Estate of Antonio
Jones, deceased, plaintiff herein

_/s/ Morris W. Thompson_
Morris W. Thompson

Morris W. Thompson Law Firm, P.A.
P. O. Box 662
Little Rock, AR  72203
Tele: (501) 661-8100
Fax: (501) 663-3544

E-mail: mwthompsonlaw@sbcglobal.net
ABN:80145

## CERTIFICATE OF SERVICE

I, the undersigned attorney for the Plaintiff, hereby, certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notification of the filing to all counsel of record.

Jason E. Owens
JASON OWENS LAW FIRM, P.A.
P.O. Box 850
Conway, Arkansas 72033-0850
tele: (501) 764-4334
fax (501) 764-9173
email: owens@jowenslawfirm.com

Dustin R. Darst
RMP LLP
710 Windover Road, Suite B
Jonesboro, AR 72401
tele: (870) 394-5200
fax: (870) 520-6250
email: ddarst@amp.law

Paul D. McNeill
RMP LLP
710 Windover Road, Suite B
Jonesboro, AR 72401
tele: (870)394-5200
fax: (870) 520-6250
email: pmcneill@rmp.law

*Morris W. Thompson*